JACQUES FARJEON, Respondent, *v.* FULTON SECURITIES COMPANY and Others, Defendants, Impleaded with THE NEW YORK EDISON COMPANY, Appellant.

First Department, April 5, 1929.

*H. Bartow Farr* of counsel [*Nathan L. Miller* with him on the brief; *Miller, Otis & Farr*, attorneys], for the appellant.

*Louis P. Eisner* of counsel [*Eugene J. Raphael* and *Ralph H. Raphael* with him on the brief; *Brodek, Raphael & Eisner*, attorneys], for the respondent.

McAVOY, J. Two orders are here on appeal, the one denying the motion of defendant the New York Edison Company for judgment on the pleadings dismissing the complaint as to it, the other granting the plaintiff's motion for an examination before trial of the New York Edison Company by two of its officers and for the production of certain books and papers upon the examination. The plaintiff sues on behalf of himself and other noteholders as the alleged owner of $30,000 promissory notes made by defendant Fulton Securities Company to one Quimby, the alleged agent of the New York Edison Company. It is alleged that $75,000 of notes of the New York Edison Company, out of a total issue of $750,000, signed by defendant " Milton C. Quimby, Agent," were deposited with defendant Cohalan, as " trustee " under the terms of a letter by which Cohalan agreed to collect them from the New York Edison Company and apply the proceeds in payment of plaintiff's notes. Plaintiff brings the action in equity as a derivative action, to enforce the rights of Fulton Securities Company and defendant Cohalan on the notes made by Quimby as an alleged " agent " for the New York Edison Company against such Edison Company. He sets forth that defendants Fulton Securities Company and Cohalan have both refused to sue, although demand has been made upon them so to do.

These Edison Company's notes signed by Quimby are claimed to have been given pursuant to an agreement of December 13, 1924, which purports to be signed by Quimby as agent, as part consideration for the purchase by the New York Edison Company from the Fulton Securities Company of certain securities relating to a certain franchise known as the Long Acre franchise. These alleged Edison Company's notes signed by Quimby and aggregating as stated $750,000 were to mature 100 days later. They are dated two days after the alleged agreement, December 15, 1924.

The plaintiff's remedy sought here is to enforce the rights of his debtor, the Fulton Securities Company, upon notes purporting to be signed by the New York Edison Company by Milton C. Quimby, as agent, without setting forth any facts as to authority, ratification, estoppel or custom binding the corporation to recognize such

apparently irregular notes. The plaintiff is not the holder of any of these notes, but only the notes of his own debtor, the Fulton Securities Company. He asks also in this complaint that the validity of his claim upon the Fulton Securities Company notes be established.

The New York Edison Company denies that the notes were ever authorized or executed by it, and alleges that the plaintiff has an adequate remedy at law against his own debtor.

The defendants Cohalan and the Fulton Securities Company admit most of plaintiff's allegations in the complaint.

The defendant Cohalan " alleges that he believes and is advised he has no standing or authority to commence " any action on the notes against the New York Edison Company; he admits that he witnessed the execution of the agreement of December, 1924, as to Quimby; that a portion of the Edison notes signed by Quimby were deposited with him and that the $75,000 of the Fulton Securities Company notes were, on December 15, 1924, delivered to Quimby, which notes are payable to his order at the office of Cohalan & Cohalan.

There appears nothing in the complaint which shows any rights in plaintiff as beneficiary under Cohalan's letter agreeing to enforce collection of the Quimby notes against the New York Edison Company.

The allegations in the complaint are that Cohalan is a " trustee " and that the notes were deposited with him " as trustee," but this is a mere conclusion. From the terms of the letter, a copy of which is attached to the complaint, and an examination of this so-called " trust agreement " in the letter from Cohalan to the Fulton Securities Company, approved by such Fulton Securities Company, it appears that no transfer of any title to the alleged Quimby-Edison notes by the Fulton Securities Company to Cohalan is contained in that letter or anywhere else so far as alleged in the complaint. No indorsement or assignment of the notes to Cohalan is set out or asserted. The letter merely acknowledges " that you have placed in my hands an obligation to collect $75,000 " and continues: " You have instructed me to collect these obligations and to apply the proceeds in discharge of an issue of $75,000 of the notes of the Fulton Securities Company payable to the order of Milton C. Quimby." And further it states, " The obligations which have been placed in my hands *for collection* bear interest at the rate of six per cent."

Plaintiff does not hold these notes sued on as a pledgee, nor as the beneficiary of a trust. He has no rights which are alleged in the complaint which show any equity to enforce by him such obligations as the Edison Company owes to Quimby and since no title passed to the alleged trustee Cohalan, he has no right to deal with

the notes as a trustee. He received the notes, as agent or as attorney to collect them and to apply the proceeds to the Quimby notes from the Fulton Securities Company. A suit to enforce them would be required to be brought in the name of the payee and not in Cohalan's name as trustee. A trust is not created unless legal title passes to the trustee. The entire title and control of these notes and their extension or collection is in the Fulton Securities Company, and plaintiff and other holders of the Fulton Securities Company notes understood this because the complaint alleges that the Fulton Securities Company agreed in writing not to give any further extension of time for the payment of the notes deposited with the defendant Cohalan, as trustee. This agreement shows that the Fulton Securities Company intended that title to the Edison Company notes signed by Quimby and control of their extension or collection should remain at all times with the Fulton Securities Company and was not transferred in any trust to Cohalan. Since no valid trust was set up by any of these instruments of which plaintiff was the beneficiary, the complaint, in so far as it attempts to enforce the rights of an alleged trustee against defendant Edison Company, cannot prevail, as plaintiff possesses no equitable rights enforcible against the Edison Company. The fact that the letter states that the proceeds of the notes will be applied in a particular manner does not make any trust. Even money sent to a bank to pay interest on specific coupons and entered by the bank in a special account does not create a trust in favor of the holders of the coupons. The only effect of deposit of moneys for the payment of interest on coupon returns is to constitute the bank the agent of the depositor to distribute the money as directed, and the depositor has a right to revoke the authority to distribute as he had the right to give the direction and demand a return of the moneys.

Since the plaintiff took his notes with a general reference on them to the Cohalan letter upon which he is suing he is thus charged with knowledge that Cohalan held the Edison notes made by Quimby for collection without any assignment or authority and subject to all the defenses the maker might have against the payee and with the knowledge that the Quimby-Edison notes were not executed by an officer of the Edison Company, but only by Milton C. Quimby, agent, without any authority presumed in law or alleged in fact, and since the notes sued on were part of an issue to Quimby representing a payment of ten per cent made by the seller to a so-called agent of the buyer, and as all these circumstances appear on the face of the pleadings, plaintiff cannot enforce any remedy in equity. He shows no equitable rights which he can enforce against the Edison Company, and he has, if anything,

a, remedy at law as against his only debtor, defendant Fulton Securities Company, whose notes he holds, and he must proceed at law against such debtor. He cannot enforce the Quimby-Edison notes through the title of the defendant Cohalan, because no trust title is created in Cohalan. Plaintiff is a mere creditor of the Fulton Securities Company which holds among its assets these alleged notes against the New York Edison Company. His remedy is entirely against his debtor and he must proceed at law against that debtor before he can in equity enforce any claim against these notes which his debtor holds against third parties.

There is nothing here to show that the Fulton Securities Company is insolvent or unable to pay the plaintiff, or that the plaintiff has made any effort to collect against the real debtor. He claims to have acquired the Fulton Securities Company notes for value, and he must, therefore, proceed in the ordinary way. To reach the equitable assets of the debtor in satisfaction of his claims, plaintiff must first exhaust his legal remedies by the recovery of a judgment against the debtor and procure the return of an execution unsatisfied. Until a creditor obtains such judgment at law against the debtor, and the return of an execution unsatisfied, no equity suit will lie to reach assets and apply them to the payment of a money demand. In so far as plaintiff seeks to enforce the rights of the defendant Cohalan under an alleged trust, since there was no trust, this branch of the action must fail. In so far as he seeks to enforce the rights of the Fulton Securities Company, since he has not first proceeded at law against that company, his equity suit does not lie.

The order denying the motion for judgment on the pleadings should be reversed, with ten dollars costs and disbursements, and the motion to dismiss the complaint granted as to defendant the New York Edison Company, with ten dollars costs; and the order for examination before trial should also be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs, on the ruling above.

DOWLING, P. J., and MERRELL, J., concur; FINCH and PROSKAUER, JJ., dissent upon the ground that plaintiff can come into equity to protect its rights in the collateral.

Order denying motion for judgment on pleadings reversed, with ten dollars costs and disbursements, and motion granted as to defendant New York Edison Company, with ten dollars costs; order granting motion for examination reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.