## FIRST DEPARTMENT, MAY, 1934.

ELIZABETH ISSAIA, Respondent, *v.* RUSSO-ASIATIC BANK, Also Known as BANQUE RUSSO-ASIATIQUE, Appellant, Impleaded with THE NATIONAL CITY BANK OF NEW YORK, and Another, Defendants.

Orders affirmed, with twenty dollars costs and disbursements. No opinion. Present — Finch, P. J., Martin, O'Malley, Townley and Glennon, JJ.; Finch, P. J., dissents and votes to reverse and grant motion.

FINCH, P. J. (dissenting). The order granting plaintiff's cross-motion to strike out the special appearance on behalf of the Russo-Asiatic Bank should be reversed and the motion denied. The authority for this appearance is established by the decision of this court in *Givatowsky* v. *National City Bank* (240 App. Div. 1020), where it was held that these appearances were authorized for the purpose of contesting the validity of proceedings instituted here against the assets of the bank. The plaintiff admits that Mr. Leon is authorized to appear for the Chinese liquidator of all the Chinese branches of the Russo-Asiatic Bank, and Mr. Curtin for the French liquidator of the French branch of said bank. As attorneys for the foreign liquidators, the appearances are in relation to the assets. Plaintiff cannot in the same law suit occupy two inconsistent positions. On the one hand, plaintiff seeks to sustain her action on the ground it is against the assets of an insolvent bank and at the same time objects to the appearance of the attorneys for appellant on the ground that they are appearing for a foreign corporation and are not appearing to conserve the assets of an insolvent bank. Appellant through these attorneys representing coliquidators thus has a vital interest in submitting to the court the question whether any jurisdiction has been obtained of it. This latter question is presented by the appeal from the order denying motion to vacate the order for service by publication. This order should be reversed since plaintiff may not obtain jurisdiction of a foreign corporate defendant through an order for service by publication without attaching property of defendant. The action is not one *in rem* but is an action in equity for the appointment of a receiver of the assets of the Russo-Asiatic Bank, to be applied to the payment of claims of creditors under direction of the court. Plaintiff clearly acquired no lien upon any specific property of the appellant by service of process upon the banks alleged to owe the appellant money. The respondent's argument that this action may be maintained as a creditors' action to reach funds of an insolvent corporation is based upon the premise that plaintiff is a judgment creditor, and the further premise that said funds are trust funds in the hands of directors of the corporation, both of which are contrary to the facts. It is well settled that at common law only a judgment creditor could maintain a creditor's bill. As was said in *Farjeon* v. *Fulton Securities Co.* (225 App. Div. 541): " To

reach the equitable assets of the debtor in satisfaction of his claims, plaintiff must first exhaust his legal remedies by the recovery of a judgment against the debtor and procure the return of an execution unsatisfied. Until a creditor obtains such judgment at law against the debtor, and the return of the execution unsatisfied, no equity suit will lie to reach assets and apply them to the payment of a money demand." Moreover, the plaintiff's complaint upon its face fails to set forth a cause of action. Plaintiff's claim is based upon a deposit of rubles in the appellant bank in Petrograd some sixteen years ago. The complaint alleges the Soviet government confiscated the property of the bank and established a governmental liquidation commission to close the offices of the bank located in Russia. Plaintiff's papers on the order for service by publication further show that by Soviet decree the bank was abolished and merged with the Soviet State Bank and its assets and liabilities assumed thereby. An act of legislation thus legalized the merger. Even with us, save as restrained by a written Constitution, an act of the legislative department must be recognized by the judicial department. It follows, therefore, that all claims based upon deposits in the Russian bank were extinguished against said bank and became a liability of the Soviet State Bank, since it is a well-settled rule of law that a contract is governed by the law of the place of its performance. As was said in Benton v: Safe Deposit Bank (255 N. Y. 260): " The general rule is that a contract made in one State and to be performed there is governed by the law of that State, and the further rule, which is a logical result, that a defense or discharge, good by the law of the place where the contract is made or to be performed, is to be held, in most cases, of equal validity elsewhere." Even though the Soviet government at the time of the aforesaid decree was not recognized by the United States government as a lawfully established authority, as pointed out by the court in Salimoff & Co. v. Standard Oil Co. (262 N. Y. 220), the courts cannot ignore the fact that it is a government maintaining peace and order and regulating the internal affairs of the country. But in any event the court further held that the subsequent recognition of the Soviet government by the United States, which has now taken place, is retroactive in effect, and validates all the acts of the government so recognized from the commencement of its existence where the situs of the property rights involved is in Russia. To the same effect is Oetjen v. Central Leather Co. (246 U. S. 297). Nor is the situation changed if it be assumed that plaintiff is an American citizen who had dealings with the bank in Russia (plaintiff apparently is a Russian who has subsequently become a resident and citizen here), for, as was said in Ricaud v. American Metal Co. (246 U. S. 304), where an American citizen sought to recover property owned by him which had been seized by the Carranza government of Mexico and sold to the defendant: " The fact that the title to the property in controversy may have been in an American citizen, who was not in or a resident of Mexico at the time it was seized for military purposes by the legitimate Government of Mexico, does not affect the rule of law that the act within its own boundaries of one sovereign State cannot become the subject of re-examination and modification in the courts of another. Such action, when shown to have been taken, becomes, as we have said, a rule of decision for the courts of this country. Whatever rights such an American citizen may have can be asserted only through the courts of Mexico or through the political departments of our government." It thus appears that plaintiff is but a simple contract

creditor having no cause of action in equity for the appointment of a receiver, no lien upon specific property to sustain an order for service by publication, and in fact no claim against respondent. It follows, therefore, that the orders appealed from should be reversed, with twenty dollars costs and disbursements, and the motion to vacate order for service by publication granted, with ten dollars costs.