M. SALIMOFF & Co. and Others, on Behalf of Themselves and All Other Persons or Corporations Similarly Situated and Who May Hereafter Intervene Herein, Appellants, Respondents, v. STANDARD OIL COMPANY OF NEW YORK, Respondent, Appellant.*

M. SALIMOFF & Co. and Others, on Behalf of Themselves and All Other Persons or Corporations Similarly Situated and Who May Hereafter Intervene Herein, Appellants, Respondents, v. VACUUM OIL COMPANY, Respondent, Appellant.*

First Department, March 10, 1933.

*Joseph M. Proskauer* of counsel [*J. Alvin Van Bergh* and *Eugene Eisenmann* with him on the brief; *Proskauer, Rose & Paskus*, attorneys], for the plaintiffs.

*Harrison Tweed* of counsel [*Wm. Dean Embree, A. Donald MacKinnon* and *John E. Lockwood* with him on the brief; *Milbank, Tweed, Hope & Webb*, attorneys], for the defendants.

MERRELL, J. These actions were brought by eleven Russian corporations, one Russian copartnership, and six Russian individuals. It is alleged that the plaintiffs are the owners or lessees of oil lands in the Baku region of Russia. Plaintiffs seek to recover the value of oil which they allege has been taken from their oil lands by the existing Soviet government in Russia and sold to the defendants. It is alleged that in November, 1917, possession of all of the oil lands of the plaintiffs in Russia, including the wells, buildings, fixtures, machinery, plants, cisterns and pipe lines, was wrongfully seized by the said Soviet government by virtue of a decree of nationalization or confiscation of all oil lands and of the whole oil producing business in Russia, and that the said Soviet government has ever since wrongfully, unlawfully and forcibly retained and maintained possession of the said lands, wells, buildings, fixtures, machinery, plants, cisterns and pipe lines without the consent of the owners thereof and of the persons lawfully entitled to the possession of the same, including the plaintiffs, and it is alleged that the said Soviet government has taken from the oil lands of the plaintiffs a large quantity of oil and has converted and sold the same to the defendants. It is further alleged that the defendants purchased and received " at or from the port of Batum," from said Soviet government and took away and converted to their own use large quantities of oil in various forms with full knowledge and notice of the plaintiffs' rights. The plaintiffs ask that the defendants be required to account for all of the oil of the plaintiffs which they have received, and that " each of the plaintiffs recover

from the defendant the value of the oil taken by the defendant from said plaintiffs' lands."

Plaintiffs moved to strike out the separate defenses contained in the answers of the defendants under subdivision 6 of rule 109 of the Rules of Civil Practice. The plaintiffs' motions to strike out these defenses were, in effect, a demurrer thereto. As in the case of a demurrer, the plaintiffs' motion in each case " searches the record for the first fault in pleading and reaches back to condemn the first pleading that is defective in substance, * * *." (*Baxter* v. *McDonnell*, 154 N. Y. 432, 436; *Small* v. *Sullivan*, 245 id. 343, 348.) Therefore, the court was called upon, first, to determine the sufficiency of the complaints in these actions. Unless the complaints state facts sufficient to constitute a cause of action, it is unnecessary to consider the sufficiency of the defenses contained in the answers.

We are of the opinion that the complaints in these actions do not state facts sufficient to constitute causes of action against the defendants. Plaintiffs' causes of action are based upon the contention that the seizure by the Soviet government of the property of the plaintiffs by virtue of the nationalization decrees promulgated by the Soviet government was unlawful and subject to attack in our courts. The plaintiffs base this contention upon the ground that the existing Soviet government in Russia has never been recognized by the United States. While it is true that the United States government, for reasons which it deems sufficient, has failed to establish diplomatic relations with the existing Soviet government in Russia or to recognize said government as a *de jure* government, nevertheless, it has recognized the *de facto* existence of the Russian Soviet government. It is a conceded fact that the present government in Russia, since November, 1917, has functioned as such; has made and enforced the laws governing the Russian nationals; has maintained peace and order; made provision for national defense; has carried on international relations with many other governments; and has ever since performed all the duties of a civilized and established government, able to compel obedience to its laws and decrees with military force, if necessary. The mere fact that the United States has taken no step to recognize the existing government in Russia is of no importance so far as the internal affairs of that country are concerned. In numerous decisions of our courts it has been directly held that the present Soviet government of Russia is a regime actually exercising governmental functions within the State of Russia. In *Banque de France* v. *Equitable Trust Co.* (33 F. [2d] 202) Judge GODDARD said (at p. 205): " That there is an existing government in Russia sovereign within its own

territory cannot be and is not entirely ignored even by our own country, although it has not recognized such government."

In *Matter of Werenjchik* v. *Ulen Contracting Corp.* (229 App. Div. 36) it was contended that certain birth certificates failed to comply with the requirements of the Workmen's Compensation Law " because they depend upon the authentication of officials of Soviet Russia, which is not recognized by the United States of America." The court in that case held the certificates sufficient, saying (at p. 37): " The non-recognition of the present government in Russia does not require the rejection of this proof. It has been judicially determined that there does in fact exist a government, sovereign within its own territory, in Russia. (*Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149; *Russian Government* v. *Lehigh Valley R. Co.*, 293 Fed. 133; *Wulfsohn* v. *Russian Republic*, 234 N. Y. 372.) "

In *Russian Reinsurance Co.* v. *Stoddard* (240 N. Y. 149) Judge LEHMAN, writing for the Court of Appeals, said (at p. 158): " The fall of one governmental establishment and the substitution of another governmental establishment which actually governs; which is able to enforce its claims by military force and is obeyed by the people over whom it rules, must profoundly affect all the acts and duties, all the relations of those who live within the territory over which the new establishment exercises rule. Its rule may be without lawful foundation; but lawful or unlawful, its existence is a fact and that fact cannot be destroyed by juridical concepts.

" We are bound by these findings, and in any event they merely embody a concise narration of events which, in most part, are within the common knowledge of the people of this country."

Among the findings referred to by Judge LEHMAN was the following: " The State of Russia is now governed by the Russian Socialist Federated Soviet Republic. Such government there exists, clothed with power to enforce its authority within its own territory, obeyed by the people over whom it rules, capable of performing the duties and fulfilling the obligations of an independent power and able to enforce its claims by military force."

Whatever may be said of the propriety or justice of the nationalizing decrees promulgated by the Soviet government of Russia, those decrees were made by the *de facto* government of that country and are there in full force and effect and binding upon all Russian nationals.

So far as we have been able to discover, there has been no decision of the New York courts holding that the decrees and laws of the Soviet government in Russia are not binding upon Russian nationals.

The question here presented is as to the effect of the decrees of nationalization and the Soviet law upon the property of Russian nationals and upon transactions entirely in Russia. In our opinion, under well-established principles of international law and in accordance with the decisions of our courts, the Soviet law and decrees must be given internal effect in that country. The property involved in this action was all situated in Russia. The sale and delivery of the oil for which the defendants are asked to account were all made in Russia. It was the property of Russian nationals. In *Wulfsohn* v. *Russian Republic* (234 N. Y. 372) the owners of a quantity of furs which had been seized in Russia and which had been confiscated by the Soviet government sued for their conversion. It was held that the Soviet government could not be sued in our courts. At the opening of the opinion in that case it is stated that the Russian Soviet government " is the existing *de facto* government of Russia," and that this was the defendant's claim and found by the Appellate Division as a matter of common knowledge, and admitted by the plaintiff. The opinion of the Court of Appeals then states (at p. 374): " The litigation is not, therefore, with regard to title to property *situated within the jurisdiction of our courts* where the result depends upon the effect to be given to the action of some foreign government." (Italics are the writer's.)

At page 375 in the same case the Court of Appeals says: " The government itself is sued for an exercise of sovereignty within its own territories on the theory that such an act if committed by an individual here would be a tort under our system of municipal law. It is said that because of non-recognition by the United States such an action may be maintained. There is no relation between the premise and the conclusion.    *    *    *

" We have an existing government sovereign within its own territories. There necessarily its jurisdiction is exclusive and absolute. It is susceptible of no limitation not imposed by itself. This is the result of its independence. It may be conceded that its actions should accord with natural justice and equity. If they do not, however, our courts are not competent to review them."

The Court of Appeals then stated that a recognized foreign government could not be sued without its consent, and that it is not subject to our laws, and that the same rule must be applied to an unrecognized foreign government, and in this connection the Court of Appeals stated (at p. 376): " In either case the hands of the State department would be tied. Unwillingly it would find itself involved in disputes it might think unwise. Such is not the proper method of redress if a citizen of the United States is wronged.

The question is a political one, not confided to the courts but to another department of government. Whenever an act done by a sovereign in his sovereign character is questioned it becomes a matter of negotiation, or of reprisals or of war."

In *Russian Republic* v. *Cibrario* (235 N. Y. 255) the Court of Appeals held that the Soviet government could not sue in our courts, saying (at p. 262): " Who is the sovereign of a territory is a political question. In any case where that question is in dispute the courts are bound by the decision reached by those departments. [*Jones* v. *U. S.*, 137 U. S. 202; *Luther* v. *Sagor*, 3 K. B. (1921) 556.] It is not for the courts to say whether the present governments of Russia or Mexico or Great Britain should or should not be recognized. They are or they are not. That is as far as we may inquire."

In the case of *Sokoloff* v. *National City Bank* (239 N. Y. 158) the plaintiff, a Russian national, had paid to the defendant here in New York $30,225, upon its promise to open an account in plaintiff's favor in its Petrograd branch and to repay said sum in rubles at a specified rate of exchange at such times and in such amounts as plaintiff might demand. Payment was made to the defendant here in New York. The account was opened and withdrawals were made from time to time from the amount deposited until the balance was reduced to $28,365, or 122,000 rubles. Thereafter the defendant dishonored checks for the balance presented by plaintiff. In that case Judge CARDOZO, writing for the Court of Appeals, stated that " * * * effect may at times be due to the ordinances of foreign governments which, though formally unrecognized, have notoriously an existence as governments *de facto*. Consequences appropriate enough when recognition is withheld on the ground that rival factions are still contending for the mastery, may be in need of readjustment before they can be fitted to the practice, now a growing one, of withholding recognition whenever it is thought that a government, functioning unhampered, is unworthy of a place in the society of nations. Limitations upon the general rule may be appropriate for the protection of one who has been the victim of spoliation though they would be refused to the spoliator or to others claiming under him. We leave these questions open. At the utmost, they suggest the possibility that a body or group which has vindicated by the course of events its pretensions to sovereign power, but which has forfeited by its conduct the privileges or immunities of sovereignty, may gain for its acts and decrees a validity quasi-governmental, if violence to fundamental principles of justice or to our own public policy might otherwise be done." The Court of Appeals concluded that the defendant had not brought itself within the exceptions referred to. In the *Sokoloff* case it must

be borne in mind that the Court of Appeals recognized the fact that the obligation of the defendant attempted to be defeated in reliance upon the Soviet decrees had a situs in New York. It is very plain from the opinion of the Court of Appeals in the *Sokoloff* case that the contention that all acts and decrees of an unrecognized government are a nullity could not be sustained.

In none of the decisions of our courts has jurisdiction been assumed, except where there was involved some extraterritorial act of the Soviet government or where there was a contractual relationship with citizens of this country. In no reported case in New York, so far as we have been able to find, has the internal effect of the law and decrees adopted by the Soviet government been questioned. We have presented in this case the question of ownership of property of Russian nationals, all situate in Russia and taken over pursuant to decrees and law promulgated by a *de facto* functioning government in Russia. We think it does not lie within the power of our courts to deny the validity of the laws and decrees of that foreign country. We cannot say that said decrees were unenforcible there. It is a fundamental principle of law that the jurisdiction of an existing government, whether recognized or not by this country, is exclusive and absolute within its own territory. In 1 Wheaton on International Law (6th ed.), page 42, the principle is stated as follows: " Sovereignty is the supreme power inherent in a State, by which the State is governed. * * *

" The internal sovereignty of a State does not, in any degree, depend upon its recognition by other States. A new State, springing into existence, does not require the recognition of other States to confirm its internal sovereignty. The existence of the State *de facto* is sufficient, in this respect, to establish its sovereignty *de jure*. It is a State because it exists."

In *Underhill* v. *Hernandez* (168 U. S. 250) the United States Supreme Court stated as follows: " Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.

" Nor can the principle be confined to lawful or recognized governments, or to cases where redress can manifestly be had through public channels."

In *Oetjen* v. *Central Leather Co.* (246 U. S. 297) the Supreme Court of the United States said (at p. 304): " To permit the validity

of the acts of one sovereign State to be re-examined and perhaps condemned by the courts of another would very certainly ' imperil the amicable relations between governments and vex the peace of nations.' "

From all of the decisions above mentioned it will appear that the fact that the existence of a foreign power has been recognized or not by this country is of little importance so far as the enactment and enforcement of laws within the foreign jurisdiction are concerned, and where a foreign State exists in fact and is functioning as such within its borders, its laws must be given full force and effect. Therefore, it does not lie within the power of our courts to declare the act of confiscation of the plaintiffs' property pursuant to Russian law to be an act of banditry conferring no title upon the government taking possession of the plaintiffs' property by virtue of its decrees.

We are, furthermore, of the opinion that the plaintiffs cannot establish that, under the controlling law of Russia, where the acts complained of occurred, those acts were actionable wrongs. This action is upon a foreign cause of action and must be governed by the law of the foreign State where the unlawful acts charged occurred. Certainly, plaintiffs would have no standing to maintain their present action in Russia. Under the existing laws no wrong was committed by the seizure of plaintiffs' property by the Soviet government, and if no right of action is created in the place where the wrong is alleged to have been committed, then there can be no recovery in tort in any other State because of such wrongful acts. In *Riley* v. *Pierce Oil Corp.* (245 N. Y. 152) the Court of Appeals said (at p. 154): " A recovery in conversion is dependent upon proof of title in or a right of possession of the goods in question. Whether the plaintiff had either under the facts before us depends upon the law of Mexico. As to what that law may be we are given no information." There is no attempt on the part of plaintiffs to show that any law of Russia prevented the defendants from purchasing and removing the oil which they had purchased of the Soviet government, nor that there is any law of Russia requiring the defendants to answer to plaintiffs for what they did. Manifestly, the plaintiffs could not show a violation of any law of Russia in making the sale to the defendants of the oil in question. The Russian Imperial government or Czarist government was overthrown by revolution and the so-called Provisional government of Russia was formed in March, 1917. It, in turn, was overthrown by the existing Soviet government. The existing government was first known as the Provisional Workers and Peasants Government of the Russian Socialist Federated Soviet Republic. Later on the

present Russian Socialist Federated Soviet government was formed by a union of the ten existing Soviet socialist republics. Both the regimes of the Russian Imperial or Czarist government and the Provisional government of Russia, which succeeded it, are dead and have no present authority whatever in Russia. This country recognized the Provisional government of Russia and our Department of State has recognized that both the Czarist and the Provisional governments are dead and have no present political existence. The death of the two governments preceding the present government has been recognized by the courts of this State, and no obligation created by either of said governments is now enforcible.

Having reached the conclusion that the plaintiffs have failed to allege in their complaints facts sufficient to constitute a cause of action against the defendants, and that said complaints must be dismissed, it is unnecessary to pass upon the validity of the separate defenses contained in the answers of the defendants. It has been often said that " a bad answer is good enough for a bad complaint," or, as stated in the opinion of VANN, J., in *Baxter* v. *McDonnell* (154 N. Y. 432, 436): " * * * he who does not so plead as to invite an issue cannot compel his adversary to so plead as to accept it."

The orders appealed from should be modified by denying plaintiffs' motion in all respects and by dismissing the complaints for insufficiency, and as so modified affirmed, with twenty dollars costs and disbursements to defendants.

FINCH, P. J., MARTIN, O'MALLEY and SHERMAN, JJ., concur.

On each appeal: Order modified by denying plaintiffs' motion in all respects and by dismissing the complaint for insufficiency, and as so modified affirmed, with twenty dollars costs and disbursements to the defendant.