M. Salimoff & Company et al., Appellants, *v.* Standard Oil Company of New York, Respondent.

M. Salimoff & Company et al., Appellants, *v.* Vacuum Oil Company, Respondent.

(Argued June 8, 1933; decided July 11, 1933.)

*Joseph M. Proskauer, J. Alvin Van Bergh* and *Eugene Eisenmann* for appellants.

*Harrison Tweed, William Dean Embree, A. Donald MacKinnon* and *John E. Lockwood* for respondents.

POUND, Ch. J. The Soviet government, by a national-ization decree, confiscated all oil lands in Russia and sold oil extracted therefrom to defendants. The former owners of the property, Russian nationals, join in an equitable action for an accounting on the ground that the confiscatory decrees of the unrecognized Soviet govern-ment and the seizure of oil lands thereunder have no other effect in law on the rights of the parties than seizure by bandits. (*Luther* v. *Sagor & Co.*, [1921] 1 K. B. 456; s. c., 3 K. B. 532; cited in *Sokoloff* v. *National City Bank*, 239 N. Y. 158, 164.) The complaints have been dismissed.

The question is as to the effect on the title of a pur-chaser from the unrecognized confiscating Soviet Russian government. Does title pass or is the Soviet government no better than a thief, stealing the property of its nationals and giving only a robber's title to stolen property? Plain-tiffs contend that the Soviet decrees of confiscation did not divest them of title.

When a government which originates in revolution is recognized by the political department of our government as the *de jure* government of the country in which it is established, such recognition is retroactive in effect and validates all the actions of the government so recognized

from the commencement of its existence. (*Oetjen* v. *Central Leather Co.*, 246 U. S. 297; *Terrazas* v. *Holmes*, 115 Tex. 32.) The courts of one independent government will not sit in judgment upon the validity of the acts of another done within its own territory, even when such government seizes and sells the property of an American citizen within its boundaries. If the Soviet government were a *de jure* government, it would follow that title to the property in this case must be determined by the result of the confiscatory Soviet decrees.

The status of the Soviet government is defined by the Secretary of State's office as follows:

" 1. The Government of the United States accorded recognition to the Provisional Government of Russia as the successor of the Russian Imperial Government, and has not accorded recognition to any government in Russia since the overthrow of the Provisional Government of Russia.

" 2. The Department of State is cognizant of the fact that the Soviet regime is exercising control and power in territory of the former Russian Empire and the Department of State has no disposition to ignore that fact.

" 3. The refusal of the Government of the United States to accord recognition to the Soviet regime is not based on the ground that that regime does not exercise control and authority in territory of the former Russian Empire, but on other facts."

It follows that the question as to the validity of acts and decrees of a regime, not the subject of diplomatic recognition, becomes a matter to be decided by the courts in an appropriate case. Thus it was held that out of respect for the political departments of the United States government only a recognized government may be a plaintiff in the courts of this State. (*Russian Socialist Federated Soviet Republic* v. *Cibrario*, 235 N. Y. 255.)

It has been held by the Appellate Division: " Whatever may be said of the propriety or justice of the nation-

alizing decrees promulgated by the Soviet government of Russia, those decrees were made by the *de facto* government of that country and are there in full force and effect and binding upon all Russian nationals. * * *

" Under well-established principles of international law and in accordance with the decisions of our courts, the Soviet law and decrees must be given internal effect in that country." (237 App. Div. 686, 689, 690.)

Writers have been inclined to the view that where a *de facto* government reigns supreme within its own territory, the courts should give full effect to its decrees, in so far as they affect private rights. (Borchard, " The Unrecognized Government in American Courts," [1932] 26 Am. J. Int. Law, 261; Fraenkel, " Juristic Status of Foreign States," [1925] 25 Columbia Law Rev. 544; Connick, " Effect of Soviet Decrees in American Courts," [1925] 34 Yale Law Journal, 499; Dickinson, " The Unrecognized Government or State in English and American Law," 22 Mich. Law Rev. 29, 118.)

The courts of this State have not gone so far. The question with us is whether, within Russia, the Soviet decrees have actually attained such effect as to alter the rights and obligations of parties in a manner we may not in justice disregard, even though they do not emanate from a lawfully established authority, recognized politically by the government of the United States. (*Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149, 157.) We have considered the extraterritorial effect of Soviet decrees which liquidated Russian banks (*Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23) and insurance companies (*First Russian Ins. Co.* v. *Beha*, 240 N. Y. 601). We have reached the conclusion in those and similar cases that such decrees had no extraterritorial effect and that the continued existence of such companies, wherever they were found to function outside of Russia, would be recognized. The consequence has been that corporations non-existent in Soviet Russia have been, like

fugitive ghosts endowed with extraterritorial immortality, recognized as existing outside its boundaries. The juristic person, the Russian corporation, dead in the country which created it, has received juridical vivification elsewhere.

In this case another situation is presented. The oil property confiscated was taken in Russia from Russian nationals. A recovery in conversion is dependent upon the laws of Russia. (*Riley* v. *Pierce Oil Corp.*, 245 N. Y. 152, 154.) When no right of action is created at the place of wrong, no recovery in tort can be had in any other State on account of the wrong. The United States government recognizes that the Soviet government has functioned as a *de facto* or *quasi* government since 1917, ruling within its borders. It has recognized its existence as a fact although it has refused diplomatic recognition as one might refuse to recognize an objectionable relative although his actual existence could not be denied. It tells us that it has no disposition to ignore the fact that such government is exercising control and power in territory of the former Russian empire. As was said by this court in *Sokoloff* v. *National City Bank* (*supra*, p. 165): " Juridically, a government that is unrecognized may be viewed as no government at all, if the power withholding recognition chooses thus to view it. In practice, however, since juridical conceptions are seldom, if ever, carried to the limit of their logic, the equivalence is not absolute, but is subject to self-imposed limitations of common sense and fairness, as we learned in litigations following our Civil War."

As a juristic conception, what is Soviet Russia? A band of robbers or a government? We all know that it is a government. The State Department knows it, the courts, the nations and the man on the street. If it is a government in fact, its decrees have force within its borders and over its nationals. " Recognition does not create the state." (*Wulfsohn* v. *Russian S. F. S. Republic*, 234

N. Y. 372, 375.) It simply gives to a *de facto* state international status. Must the courts say that Soviet Russia is an outlaw and that the Provisional government of Russia as the successor of the Russian Imperial government is still the lawful government of Russia although it is long since dead? (See *Nankivel* v. *Omsk All Russian Government*, 237 N. Y. 150, 156.) The courts may not recognize the Soviet government as the *de jure* government until the State Department gives the word. They may, however, say that it is a government, maintaining internal peace and order, providing for national defense and the general welfare, carrying on relations with our own government and others. To refuse to recognize that Soviet Russia is a government regulating the internal affairs of the country, is to give to fictions an air of reality which they do not deserve.

The courts cannot create a foreign wrong contrary to the law of the place of the act. (*Slater* v. *Mexican Nat. R. R. Co.*, 194 U. S. 120; *American Banana Co.* v. *United Fruit Co.* 213 U. S. 347.) The cause of action herein arose where the act of confiscation occurred and it must be governed by the law of Soviet Russia. According to the law of nations it did no legal wrong when it confiscated the oil of its own nationals and sold it in Russia to the defendants. Such conduct may lead to governmental refusal to recognize Russia as a country with which the United States may have diplomatic dealings. The confiscation is none the less effective. The government may be objectionable in a political sense. It is not unrecognizable as a real governmental power which can give title to property within its limits.

A careful examination of the New York cases reveals some expressions from which it might be inferred that the Soviet government is still to be regarded as a band of thieves, exercising power without authority, but the basic fact of all the cases is stated as follows: " The State of Russia is now governed by the Russian Socialist Fed-

erated Soviet Republic. Such government there exists, clothed with power to enforce its authority within its own territory, obeyed by the people over whom it rules, capable of performing the duties and fulfilling the obligations of an independent power and able to enforce its claims by military force." (*Russian Reinsurance Co. v. Stoddard*, 240 N. Y. 149, 157.)

The legitimate conclusion is that the existing government cannot be ignored by the courts of this State, so far as the validity of its acts in Russia is concerned, although the attempt is here made to nullify such acts and create a cause of action in tort in favor of Russian nationals against American corporations, purchasers for value from the Soviet government of property in Russia in accordance with Soviet law.

Our own government thus looked on the acts of the States lately in rebellion. Although the legal status of the Confederate States and of their legislation during the war was held to be " simply an armed resistance to the rightful authority of the sovereign " (*Hickman* v. *Jones*, 9 Wall. [U. S.] 197, 200), the acts of the confederacy were nevertheless treated as valid and binding where considerations of public policy did not otherwise require. ( *United States* v. *Insurance Companies*, 89 U. S. [22 Wall.] 99.)

Non-recognition is no answer to defendant's contention, no reason for regarding as of no legal effect the laws of an unrecognized government ruling by force, as the Soviet government in Russia concededly was. " Within its own territory the Soviet was a sovereign power." (W. S. ANDREWS, J., in 12 Cornell Law Quarterly, 441.)

The order in each case should be affirmed, with costs; the first question certified answered in the negative and the other questions not answered.

CRANE, LEHMAN, KELLOGG, O'BRIEN and CROUCH, JJ., concur; HUBBS, J., not sitting.

Orders affirmed, etc.