IDA WERFEL, Respondent, v. ZIVNOSTENSKA BANKA, Appellant.*

First Department, December 20, 1940.

*Lewis H. Saper,* for the appellant.

*Jacob Chaitkin* of counsel [*Moss, Marcus & Gardener,* attorneys], for the respondent.

TOWNLEY, J. Plaintiff has served a complaint stating three causes of action to recover $5,848.15 (170,500 Czechoslovakian crowns) on deposit to the credit of the plaintiff with the defendant, a bank in Prague. A warrant of attachment was issued on the ground that the defendant is a foreign corporation having its place of business in Prague. Moneys belonging to the defendant on deposit with the Chase National Bank were attached by the sheriff of New York county.

An outline of the pleadings is as follows: In the first cause of action it is alleged that, during the year 1936, the plaintiff opened an account with the defendant, a foreign banking corporation, in the city of Prague, Czechoslovakia, in a sum of money exceeding the amount of 170,500 Czechoslovakian crowns which the defendant received on deposit and promised to repay to plaintiff or her order; that on or about March 15, 1939, the plaintiff had and still has on deposit and in her name, and to her credit, in the defendant bank, the sum of 170,500 Czechoslovakian crowns; that no part thereof has been paid by the defendant; that the value of said 170,500 Czechoslovakian crowns amounted to $5,848.15; that on or about March 15, 1939, the military forces of Germany occupied and took possession of the Republic of Czechoslovakia and took over the control of its banks, including the defendant bank; that the German forces purported to forbid the Czechoslovakian banks, including the defendant bank, to pay out any moneys to Jewish depositors; that the plaintiff is a Jew; that the defendant complied with the said prohibitions, orders and decrees and refused to permit the withdrawal of any funds on deposit with it, held in the name of Jews; that, therefore, a demand by the plaintiff for payment upon the defendant bank would be futile; and that the defendant is indebted to the plaintiff in the sum of $5,848.15, with interest from March 15, 1939.

In the second cause of action the same facts are pleaded with the addition that the German military forces of occupation in Czechoslovakia purported to prohibit all banks in that Republic, including the defendant bank, from paying any money to non-residents and foreign depositors, including residents of the United States; that on March 15, 1939, when the German military forces occupied Czechoslovakia, the plaintiff was a resident of the city of New York; that the defendant bank complied with the orders and decrees of the German forces of occupation, and refused to permit the withdrawal of any funds on deposit with it in the names of non-residents and foreigners, including residents of the United States; that, therefore, a demand for payment would be futile.

In the third cause of action it is alleged that in the year 1936 the defendant received in excess of the sum of 170,500 Czechoslovakian crowns, the property of the plaintiff, which moneys (Czechoslovakian crowns) the defendant promised to pay plaintiff, but has failed to do so; that since March 15, 1939, the defendant and all other citizens of the Republic of Czechoslovakia have been and still are under the control of the German military authorities, and still are forcibly prevented from paying out moneys to non-residents or Jewish creditors; and that any demand for payment of such moneys would, therefore, be futile.

For a separate and distinct defense, it is alleged that the defendant is a banking corporation duly organized under the laws of the government of Czechoslovakia, having its principal office and place of business in Prague, Czechoslovakia, and is required to adhere to and comply with the rules, regulations, laws and decrees of the government of Czechoslovakia, and was not and is not permitted to deliver any foreign moneys or foreign currencies without first obtaining the consent or permission of the National Bank of Czechoslovakia; that pursuant to the laws and decrees of said government, one of March 4, 1924, and the other of October 2, 1931, it is specifically provided: That the delivery of foreign moneys or foreign currencies by any banking corporation organized under the laws of the government of Czechoslovakia, including the defendant bank, is prohibited unless permission be first obtained from the National Bank of Czechoslovakia, irrespective of race, nationality and religion of the depositor; that said laws and decrees were a long time prior to and after the commencement of this action and still are in full force and effect; that subsequent to September 29, 1937, and at various times thereafter, the plaintiff deposited with the defendant bank Czechoslovakian crowns and said account was opened as "Blocked and Non-transferable Austrian Crown Account." The account was opened by the plaintiff with the defendant in conformity with and subject at all times to the laws and decrees of the government of Czechoslovakia and was so opened by the plaintiff with the knowledge of said laws and decrees, and with the knowledge that the delivery of foreign moneys or foreign currencies was permitted only with the permission of the National Bank of Czechoslovakia, which permission could not be obtained by or on behalf of the plaintiff; and that at no time did the plaintiff have any accounts or deposits with the defendant bank payable to her in foreign moneys or foreign currencies, to wit, American dollars.

On this state of the pleadings, both parties moved for summary judgment. Special Term granted plaintiff's motion for summary judgment and struck out the answer. The three causes of action in the complaint read together indicate that at the present time no non-resident or foreigner can withdraw Czechoslovakian bank deposits because of the decrees and orders of the German military government of the former Czechoslovakia. Taking these allegations most favorably to the plaintiff, we find that the German government is alleged to be a *de facto* but not *de jure* ruler of Czechoslovakia from the point of view of the State Department of the United States. From this situation the plaintiff argues that all prior Czechoslovakian decrees regarding foreign currency have

become a nullity because, since the Czechoslovakian government is no longer in control of Czechoslovakia, the reason for those decrees has fallen and, therefore, the laws themselves must be deemed to have fallen. The plaintiff then proceeds to argue that since the German government is merely a *de facto* government, its decrees will not be respected by the courts of the United States and in support of this she relies on the various decisions of the Court of Appeals in the Russian ruble cases which arose after the Russian revolution.

Unfortunately for the plaintiff, the Court of Appeals has not outlawed all the acts of a *de facto* government. It was said in *Salimoff & Co.* v. *Standard Oil Co.* (262 N. Y. 220):

" The courts may not recognize the Soviet government as the *de jure* government until the State Department gives the word. They may, however, say that it is a government, maintaining internal peace and order, providing for national defense and the general welfare, carrying on relations with our own government and others. To refuse to recognize that Soviet Russia is a government regulating the internal affairs of the country, is to give to fictions an air of reality which they do not deserve.

" The courts cannot create a foreign wrong contrary to the law of the place of the act. (*Slater* v. *Mexican Nat. R. R. Co.,* 194 U. S. 120; *American Banana Co.* v. *United Fruit Co.,* 213 U. S. 347.) The cause of action herein arose where the act of confiscation occurred and it must be governed by the law of Soviet Russia. According to the law of nations it did no legal wrong when it confiscated the oil of its own nationals and sold it in Russia to the defendants. Such conduct may lead to governmental refusal to recognize Russia as a country with which the United States may have diplomatic dealings. The confiscation is none the less effective. The government may be objectionable in a political sense. It is not unrecognizable as a real governmental power which can give title to property within its limits."

The court said further:

" The legitimate conclusion is that the existing government cannot be ignored by the courts of this State, so far as the validity of its acts in Russia is concerned, although the attempt is here made to nullify such acts and create a cause of action in tort in favor of Russian nationals against American corporations, purchasers for value from the Soviet government of property in Russia in accordance with Soviet law.

" Our own government thus looked on the acts of the States lately in rebellion. Although the legal status of the Confederate States and of their legislation during the war was held to be ' simply

an armed resistance to the rightful authority of the sovereign.' (*Hickman* v. *Jones*, 9 Wall. [U. S.] 197, 200), the acts of the confederacy were nevertheless treated as valid and binding where considerations of public policy did not otherwise require. (*United States* v. *Insurance Companies*, 89 U. S. [22 Wall.] 99.)

" Non-recognition is no answer to defendant's contention, no reason for regarding as of no legal effect the laws of an unrecognized government ruling by force, as the Soviet government in Russia concededly was. 'Within its own territory the Soviet was a sovereign power.' (W. S. ANDREWS, J., in 12 Cornell Law Quarterly, 441.) "

This case presents a situation where the decrees made by the *de facto* government, which are objected to, are not confiscatory in their nature at all but are regulatory of foreign exchange transactions only to approximately the same degree as existed under the old Czechoslovakian government and such as exist to common knowledge in the United States today in so far as certain belligerent countries are concerned. It is impossible to treat such decrees as violating the law of nations and as not subject to respect by the courts of the United States. On this view of the case, the whole complaint is demurrable because it fails to state a cause of action.

There appear in the answering affidavits statements from the German government to the State Department of the United States fully explaining the present Czechoslovakian government. The German government makes no pretense of having absorbed Czechoslovakia but has announced that the various portions of Czechoslovakia are governed by Czech nationals and that the former laws of Czechoslovakia are in full force and effect except in so far as they conflict with the general regulations of the German Reich. Assuming that this statement of intergovernmental relationships is true (and it is in no wise contradicted by the affidavits), it is clear that the complaint is bad for the further reason that no demand for payment is alleged to have been made in Czechoslovakia on the bank (*Bank of British North America* v. *Mer. Nat. Bank*, 91 N. Y. 106; *Sokoloff* v. *National City Bank*, 250 id. 69; *Zimmerman* v. *Hicks*, 7 F. [2d] 443), and it is not alleged that permission has been obtained from the National Bank of Czechoslovakia, which permission is essential under the regulations.

The complaint fails to state a cause of action either on the theory that the Czechoslovakian government is still in existence or on the theory that the German government is in full control and is merely a *de facto* government.

It may be pointed out that the situation resulting has nothing to do specifically with any anti-Jewish regulations adverted to in the first cause of action. The regulations, by the plaintiff's own complaint, in so far as inability to move money from Czechoslovakia to New York is concerned, apply to all foreigners and specifically to residents of the United States. The case, therefore, could not in any event be decided on the theory that anti-Jewish regulations were so oppressive as to require that the courts of this community should disregard them. However, as to that point, see the decision of the Court of Appeals in *Holzer* v. *Deutsche Reichsbahn-Gesellschaft* (277 N. Y. 474), by which we are bound.

The order and judgment should be reversed, with costs, the plaintiff's motion for summary judgment denied, and the defendant's cross-motion for summary judgment dismissing the complaint granted.

MARTIN, P. J., GLENNON, UNTERMYER and COHN, JJ., concur.

Judgment and order unanimously reversed, with costs, the plaintiff's motion for summary judgment denied, and the defendant's cross-motion for summary judgment dismissing the complaint granted.