THE DENNY.

AGRICULTURAL COOPERATIVE ASS'N OF LITHUANIA LIETUKIS, et al. v. THE DENNY, et al. (LATVIAN STATE CARGO & PASSENGER S. S. LINE, Intervener).

No. 7874.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 4, 1942.

Decided March 27, 1942.

Rehearing Denied April 21, 1942.

James L. R. Lafferty, of Newark, N. J., and Charles Recht, of New York City, Lindabury, Steelman, Zink & Lafferty, of Newark, N. J., Osmond K. Fraenkel, of New York City, and Alfred R. Gessinger, of Newark, N. J., on the brief), for appellants.

P. A. Beck, of New York City (W. Ludlow James, of New York City, on the brief), for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

Baltic Lloyd [1] was organized as a stockholders' association and Lietukis [2] as a cooperative association under the laws of the Republic of Lithuania. These associations were juridical persons with the power to sue and be sued. In 1940 Litamcor [3],

[1] Lietuvos Baltijos Lloydas (Lithuanian Baltic Lloyd Ltd.).
[2] Lietuvos Zemes Ujio Kooperatyvu Sajunga Lietukis (Agricultural Cooperative Association of Lithuania Lietukis).
[3] Lithuanian-American Import and Export Corporation.

American agent for the two corporations, purchased the S. S. Denny for Baltic Lloyd and a large quantity of gasoline, lubricating oil and other cargo for Lietukis. The vessel and cargo remained in the United States in the custody of Litamcor. On February 1, 1941 a libel for possession of the S. S. Denny and her cargo and for damages for their detention was filed in the District Court for the District of New Jersey in the names of Baltic Lloyd and Lietukis by one Charles Recht purporting to act as their attorney-in-fact. The marshal of the district executed the monition and citation by seizing the S. S. Denny and her cargo at Newark, New Jersey and by serving notice upon the respondents, Litamcor and Ole Hanvorsen, the watchman in charge of the vessel. On February 20, 1941 the Consul General of the Republic of Lithuania, under written authority of the Minister of Lithuania to the United States appointed Litamcor trustee of the S. S. Denny and her cargo. On February 24, 1941 Litamcor filed an answer to the libel as claimant. Before the matter came on for trial Charles Recht, purporting to act as attorney-in-fact for the State Steamship Line[4], a corporation of the Soviet Socialist Republic of Latvia obtained leave for that corporation to intervene as libellant. On July 28, 1941 the District Court dismissed the libel and the intervening libel. On October 20, 1941 the libellants filed a notice of appeal with bond for costs on appeal. No supersedeas bond has ever been filed. After the expiration of ten days from the entry of the decree of the District Court dismissing the libel the clerk of the court ordered their release to the claimant. Counsel for the claimant stated at bar that the vessel has since engaged in trade between American and Canadian ports. He likewise stated that the cargo has been sold and that the proceeds are in the possession of the claimant. Consequently when the appeal was taken the court had neither actual nor constructive possession of the res.

The first question to be considered on this appeal is whether the court lost jurisdiction before the appeal was taken. The libellants maintain that an admiralty court which has obtained jurisdiction following a valid arrest and seizure of the res retains that jurisdiction despite the removal of the res and cites The Rio Grande, 23 Wall. 458, 90 U.S. 458, 23 L.Ed. 158 as authority.

We take the rule laid down by that case to be that if the removal is accidental, fraudulent or improper, jurisdiction is not lost. In the Rio Grande case the District Court of Alabama dismissed a libel on the ground that the debts set forth therein did not constitute a maritime lien so as to give the court jurisdiction. This was on May 11, 1868. On the same day and immediately after the rendition of the decree of dismissal the court allowed an appeal and an order was made fixing the amount of the bonds to be given on the appeal. On May 12th the vessel was delivered by the marshal to the claimants and was by them carried out to sea. On May 14th and 15th the libellants gave their appeal bonds which were accepted. The statutes in regard to appeals in admiralty from the District Court to the Circuit Court provided that upon sufficient security and service of notice, the appeal should be a supersedeas and stay execution. The Circuit Court reversed and decreed for the libellants. The vessel was at that time in New Orleans. The libellants seized her there, attaching a copy of the record of the Alabama proceeding to the libel. The defense was that at the time the libellants took their appeal from the decree the vessel proceeded against in rem was not in the actual or constructive possession of the District or Circuit Court. As to this argument the Supreme Court said at pages 463, 465 of 23 Wall., 90 U.S. 458, 23 L.Ed. 158:

"But the appeal which was allowed by that court on the 11th of May, operated as a stay of all proceedings upon or under the judgment of dismissal of the libels made on that same day, and but a few minutes before. The appeal was well allowed, the bonds are in compliance with the order of the court so far as it appears, were accepted by the clerk, and were not objected to by the parties. We cannot agree with the argument of the claimant that under such circumstances the Circuit Court in Alabama had no jurisdiction of the appeal, and that its decree was void.

"The appeal stayed all proceedings, and the parties were bound to keep the vessel where it then was, to wit, in the possession of the court. The appeal was taken and allowed before any order of discharge was granted, and the bonds required to make the appeal a stay of proceedings were given within the time required by the statute.

---

4 Latvian State Cargo and Passenger Steamship Line.

"The removal of the vessel pending an appeal to the Circuit Court was illegal, in violation of the express directions of the statute regulating appeals.

"We do not understand the law to be that an actual and continuous possession of the res is required to sustain the jurisdiction of the court. When the vessel was seized by the order of the court and brought within its control the jurisdiction was complete. A subsequent improper removal cannot defeat such jurisdiction. * * *

"We hold the rule to be that a valid seizure and actual control of the res by the marshal gives jurisdiction of the subject-matter, and that an accidental or fraudulent or improper removal of it from his custody, or a delivery to the party upon security, does not destroy jurisdiction. In the present case the order for restoration was in direct violation of the statute regarding appeals, and did not operate to destroy the jurisdiction of the Circuit Court. That court was authorized to proceed as if no such order had been made."

█ In the present case the removal was neither accidental, fraudulent nor improper. Rule 28 of the Admiralty Rules of the District Court for the District of New Jersey contemplates that a decree in admiralty may be executed after ten days. It reads:

"In appealable cases ten days from the time of service of a copy of the decree on the opposite proctor, with notice of its entry, shall be allowed to enter an appeal, within which time the decree shall not be executed * * *"

Rule 57 of the Admiralty Rules of the Supreme Court, 28 U.S.C.A. following section 723, contemplates the delivery of property in the custody of the marshal to the claimant upon the dismissal of the libel. The decree dismissing the libel was filed July 28th. The notice of appeal was not filed until October 20th. Between July 28th and October 20th nothing was done by the libellants to prevent the execution of the decree. After October 20th there was a notice of appeal of record but nothing to stay proceedings. For although an appeal from a decree of the district court may be taken by the filing of a notice of appeal, a stay of proceedings under the decree may only be had upon the filing of a supersedeas bond. Federal Civil Procedure Rule 73(d), 28 U.S.C.A. following section 723c, made applicable to admiralty cases by Rule 15 of this court. Since the marshal properly abandoned custody of the res and since there is neither stipulation nor bond to treat as a substituted res, neither the district court nor this court now has such jurisdiction in rem as would support a decree awarding possession of the vessel and its cargo.

The libel, however, is not only in rem for possession of the vessel and cargo but also in personam for damages for their wrongful detention. The prayers for process and for relief are in the form customarily used in a libel which combines a suit in rem with one in personam, 2 Benedict on Admiralty §§ 262, 263. Insofar as the suit is in personam this court retains the jurisdiction which it acquired when the respondents were served with process. We therefore pass to the consideration of the libellants' claims against the respondents in personam.

All parties concede that both title and the right to possession of the vessel are in Baltic Lloyd and of the cargo in Lietukis. Recht maintains that he is the agent authorized by Baltic Lloyd and Lietukis to take possession on their behalf and he relies upon powers of attorney from each of them to substantiate his claim of agency.[5] Litamcor maintains that it is the agent of both and is authorized to retain possession for them and it also offers as proof its appointment as trustee by the Lithuanian consul. It attacks the sufficiency of the powers of attorney to Recht upon three distinct grounds; that they were improperly executed, acknowledged and authenticated; that they were given by the officers of Baltic Lloyd and Lietukis under duress; and that they were given by officers of Baltic Lloyd and Lietukis at a time when those corporations had been nationalized and therefore had no juridical existence in the country of their origin.[6] The dis-

[5] In the intervening libel Recht makes the claim that by reason of the nationalization decrees of the Soviet Socialist Republic of Lithuania the right to possession of the S. S. Denny is in Baltic Lloyd solely for the purpose of delivering it to the State Steamship Line, the corporation entrusted with the task of the nationalization of the Lithuanian merchant marine.

[6] Some historical background is necessary in order to understand these contentions. In June, 1940 the Russian army entered Lithuania. In July, 1940, the

408

trict court found that Baltic Lloyd and Lietukis had been dissolved by operation of law and their right as juridical persons to sue had been abrogated and that the powers of attorney to file suit on their behalf had been executed under coercion and therefore conferred no authority upon Recht.

We shall deal first with the contention that the acknowledgment and authentication of the powers of attorney given by Baltic Lloyd and Lietukis were insufficient to authorize their admission in evidence without further proof and that the powers were therefore improperly admitted. The purpose of the acknowledgment of a written instrument before a public officer and its authentication by him is to entitle it to record or to authorize its admission in evidence without other proof.[7] There is no federal statute prescribing the mode of acknowledgment and authentication of a written instrument so as to authorize its admission in evidence in a court of admiralty. The matter involves a rule of evidence, however, and it is settled that a court of admiralty is not bound by all the rules of evidence followed in courts of common law.[8] It was many years ago held that a notary is a public officer long recognized throughout the commercial world whose official certificate is admissible in a court of admiralty as evidence of the facts certified.[9] In the present case the acknowledgments of the powers of attorney given by Lietukis and Baltic Lloyd were made before Vilhelmas Burkevicius, a notary of the Kaunas State Notary Office at Kaunas, Lithuania. To both of the powers he appended his certificate and affixed his seal. Lietukis and Baltic Lloyd could of course act only through officers who were authorized to do so. The certificate of the notary to the power of attorney given by Lietukis recites that the power "was stated to me and signed be-

fore me by the fully authorized members, who are known to me, of the Executive Board of * * * Lietukis * * *; 1/Jurgis Kriksciunas and 2/Vincas Meilus, * * * acting in the name of * * *, Lietukis, in accordance with the by-laws * * * and in conformity with the protocol of the general annual convention of delegated members of the said association held on May 10th, 1940." The notary's seal and signature were authenticated by the Assistant People's Commissar of Justice of the Lithuanian Soviet Socialist Republic, the signature of that official was authenticated by the Chief of the Consular Bureau of the People's Commissariat for Foreign Affairs for the Union of Soviet Socialist Republics at Moscow, and the latter's signature, seal and official status were in turn authenticated by an American Vice Consul at Moscow. Not only the identity of the persons acting on behalf of the association but also their authority so to act, as evidenced by the by-laws, is vouched for by the notary. In re Culbertson v. H. Witbeck Co., 1887, 127 U.S. 326, 8 S.Ct. 1136, 32 L.Ed. 134, an acknowledgment to a deed was taken in New Jersey by a master in chancery and notary public who said in his certificate that the parties, naming them, personally appeared before him and "who, I am satisfied, are the grantors in the within deed of conveyance." To the objection that it did not appear on the certificate that the persons acknowledging were the same persons as those named as grantors in the deed the court said at page 330 of 127 U.S., at page 1138 of 8 S.Ct., 32 L.Ed. 134 "We are inclined to the opinion that this is sufficient evidence that the parties who appeared before him were the grantors in the deed. If he was satisfied of that fact, the court cannot now inquire into the evidence by which he reached that conclusion." We conclude that the certificate of

conduct of the affairs of the Republic of Lithuania was taken over by the Lithuanian Soviet Socialist Republic. In August, 1940, the application of that regime to be absorbed into the Union of Soviet Socialist Republics was accepted. In September, 1940 the Lithuanian Soviet Socialist Republic passed a number of decrees directed at the nationalization of private commercial enterprises, of industrial enterprises and of the merchant marine. The United States Department of State has not recognized the regime now functioning in Lithuania, the absorption of Lithuania by the Union of Soviet Socialist Republics nor the legality of the nationalization decrees.

7 Williams v. Conger, 1888, 125 U.S. 397, 8 S.Ct. 933, 31 L.Ed. 778; Linton v. National Life Ins. Co., 8 Cir., 1909, 104 F. 584; 1 C.J.S., Acknowledgments, § 3.

8 The Rosalia, 2 Cir., 1920, 264 F. 285; Pennsylvania R. Co. v. Downer Towing Corp., 2 Cir., 1926, 11 F.2d 466.

9 The Gallego, D.C.N.Y. 1887, 30 F. 271.

the Lithuanian notary, authenticated as we have indicated, was sufficient evidence of the execution of the power of attorney by the officers of Lietukis and of their authority to act to render the power admissible in evidence in a court of admiralty without other proof. What we have said as to the power of attorney given by Lietukis applies as well to the power of attorney given by Baltic Lloyd.

■ An entirely different problem, however, is raised by the paper upon which Recht relies for his authority to act as attorney in fact for State Steamship Line. That paper is nothing more than a cablegram, unsigned, instructing Recht to act on behalf of the corporation. There is nothing upon which one could base a finding that the State Steamship Line, taking corporate action through duly authorized officers, had granted to Recht authority to make claim to the S. S. Denny. The paper is clearly insufficient to establish Recht's authority to act for State Steamship Line.

■ The next contention is that the powers of attorney were void because executed by the officers of Baltic Lloyd and Lietukis under duress. The only evidence presented to the district court [10] having any bearing upon this issue may be summarized as follows: A witness for the claimant testified that he saw armed Russian troops enter Kaunas, Lithuania in June, 1940. He saw Russian sentries placed at the depots, granaries and warehouses of Lietukis but not at the retail shops. Another witness for the claimant, the president of Litamcor, testified that in May, 1941 Litamcor received a cablegram from Berlin which read:

"1941 May 21 AM 713
"WS1 XA PRD224
"Berlin 46 21 1115
"Urgent Lithuanian American Import Export Corporation
"157 Chambers New York
"At the request of Reklaitis Glemza I inform you that Laivynas was nationalized October 1940 Stop Power of Attorney was given to Recht when the Board of Directors was no more functioning and on the orders of Commissar for Finance Stop Signatures were given under compulsion

Stop Now being free revoke the signatures Stop Lietukis reorganized under compulsion name changed Stop Letter follows
"Ancevicius"

Reklaites and Glemza, referred to in the cable, were president and secretary of Baltic Lloyd. The witness testified that he was informed that these men were in a Lithuanian refugee camp in Germany. The competency of the evidence is extremely questionable and in our opinion falls short of justifying the fact finding that the powers of attorney were given under duress.

■ Nor are we persuaded that the powers of attorney are without effect because Lietukis and Baltic Lloyd are no longer in existence. It is at least doubtful whether Lietukis has in fact been nationalized. None of the decrees in evidence bears directly upon the nationalization of agricultural cooperatives. Exhibit C-8 dealing with registration of various enterprises, treats cooperative societies in a separate classification from nationalized enterprises. Exhibit C-9 consists of excerpts from Lithuanian newspaper articles to the effect that a structural reorganization of Lietukis was in contemplation. This assumes the continued existence of Lietukis as a base for the enlarged organization. There is evidence that commissars were appointed for Lietukis but none that the appointment of commissars meant nationalization. A witness for the libellants, qualified in Russian law, testified that by that law cooperatives are not nationalized. We are therefore confronted with arguments based upon the theory that Lietukis was nationalized but no proof that such is the fact.

■ The case of Baltic Lloyd is different. It is undisputed that the corporation was nationalized. The dispute is as to the effect of nationalization. From the decree of nationalization, Exhibit C-7, it seems clear that all property of Baltic Lloyd is to be taken over by a designated substitute and that the stockholders of Baltic Lloyd are to be compensated at a fixed rate. The court is not enlightened, however, as to the effect of the nationalization of a corporation upon its continuance in existence so long as is necessary for

---

[10] An appeal in admiralty from the District Court to the Circuit Court of Appeals opens the entire case for a trial de novo in the appellate court. Brooklyn Eastern Dist. Terminal v. United States, 1932, 287 U.S. 170, 176, 53 S.Ct. 103, 77 L.Ed. 240.

the collection of its assets. There is no evidence that immediately upon nationalization a corporation ceases to exist for all purposes and no basis for such a fact finding. If Baltic Lloyd continued to exist for the sole purpose of collecting its assets it had capacity to grant a power of attorney to an agent for that purpose.

Finally it is argued that since the government of the Lithuanian Soviet Socialist Republic and its admission to the Union of Soviet Socialist Republics have not been recognized by our government this court may not, by permitting Recht to act under the powers of attorney given to him, recognize or give effect to the decrees of the Soviet Socialist Republic which reorganized Lietukis and nationalized Baltic Lloyd. But these are both Lithuanian associations and the parties in interest, so far as here appears, are all citizens of Lithuania and domiciled therein. The rights of American citizens or residents are not involved. We may not ignore the fact that the Soviet Socialist government did actually exercise governmental authority in Lithuania at the time the decrees in question were made and the powers of attorney were given, but must treat its acts within its own territory as valid and binding upon its nationals domiciled therein.[11] It follows that the respondents may not question in this court the validity of the Lithuanian decrees insofar as concerns their effect upon the interests of the former members of the associations therein or the validity of the powers of attorney executed by the associations' officers and offered in this proceeding.

We accordingly conclude that the powers of attorney given by the two libellants were sufficiently proved and were effectual to empower Recht to file the libel on their behalf but that his authority to act for State Steamship Line was not established. It follows that the district court erred in dismissing the libel insofar as it set up claims of Lietukis and Baltic Lloyd against the respondents in personam. These claims were for damages for the detention of the vessel and cargo. No fact findings were made by the district court as to these alleged damages. Indeed such fact findings would have had no significance in view of the court's conclusion that the libels were improperly filed. Save for the bill of sale for the S. S. Denny and bills of lading for the cargo the libellants offered no evidence having any bearing on their claims for damages. The course and conduct of the trial were such as practically to preclude such evidence. The parties should, therefore, be accorded a further hearing of these issues.

The decree is reversed and the cause is remanded with directions to reinstate the libel of Lietukis and Baltic Lloyd solely as to the claims therein in personam for damages, and to accord the parties a rehearing upon the issues raised by the pleadings as to those claims.

---

[11] M. Salimoff & Co. v. Standard Oil Co., 262 N.Y. 220, 186 N.E. 679, 89 A.L.R. 345.