**RAIJ v. PAN AMERICAN LIFE INS. CO.**
No. 61-C-7089.

Circuit Court, Dade County.
June 6, 1962.

Oscar A. White and Herbert I. Wall, both of Miami, for plaintiff.

Dixon, De Jarnette, Bradford, Williams, McKay & Kimbrell, Miami, for defendant.

HAL P. DEKLE, Circuit Judge.

Plaintiff purchased from defendant in 1942 a life insurance policy which was issued from the defendant's home office in New Orleans but delivered in Cuba to the plaintiff, a Cuban national and a resident of Cuba at that time. This was a twenty year endowment policy and all premiums were paid to and accepted by defendant until November 1960, when the premium was refused and returned. Subsequent tenders of such premiums have been refused and plaintiff seeks a declaration of his rights to pay the premium and to require the defendant to accept them and further to declare that such policy is in full force and effect.

Defendant admits issuance of the policy and payment and tender of premiums but disclaims any further liability under the policy, inter alia, on the ground that the Castro Revolutionary Government of Cuba on October 24, 1960, by its now well known Resolution #3, forcibly expropriated the Cuban division of defendant insurance company and substituted the present Cuban Revolutionary Government as "obligor" on all of defendant's Cuban liabilities and contracts, including plaintiff's insurance policy in question.

Although defendant asserts that the place of performance for payment of premiums and benefits is in Cuba, the contract itself provides — "All payments regarding this policy, made either by

the company or the insured, will be made in the City of New Orleans in legal currency of the United States of America."

"The law of the place of performance generally governs the contract and its discharge." Restatement, Conflict of Laws, Sec. 385; Zimmerman v. Sutherland, 274 U. S. 253, 47 S. Ct. 625, 7 L. Ed. 1034.

The provisions of the contract for payment of the policy in New Orleans in United States dollars controls therefore unless defendant shows that such terms have been effectively changed. Defendant urges that this has been changed by virtue of a Cuban resolution prior to Castro, that after April, 1951, the United States dollar would cease to be legal tender in Cuba and that all contracts theretofore payable in dollars would be payable only in pesos. Defendant also asserts post-Castro law #568, prohibiting defendant from paying any monies to Cuban nationals anywhere except in Cuba, but counsel very wisely does not assert any argument of an extra-territorial effect, that such a Cuban law could affect the defendant in this bastion of freedom.

Of interest in this respect is Anglo-Continentale Treuhaud, A.G. v. St. Louis Southwestern Rwy. Co., CCA 2 1936, 81 Fed. 2d 11, which deals with a contract providing for payment of bonds, either in gold or in the currency of several countries, including guilders in Holland. Plaintiff presented the bonds for payment in Amsterdam, giving rise to the question whether they thereby became payable in dollars calculated at the gold par of the guilder or, as defendant there contended, at the rate of exchange in New York. Plaintiff's choice prevailed. Defendant asserted the congressional joint resolution removing the United States from the gold standard, urging that such U. S. law thus changed the choice provided in the contract. The court held to the contrary, and said at page 12 —

* * * * In its impact upon alien obligees as well, if construed as the defendant wishes, the resolution would have results which we ought not to impute to Congress gratuitously. It may be too much to say that a statute would be void which should undertake to discharge a citizen from a contract with an alien to be performed abroad; conceivably if the alien had to seek the obligor here, the statute would protect him. Yet no court of the place of performance would pay the least attention to it, if the citizen or his property fell within its power; by the law of most civilized countries the legality of the performance of a contract depends upon the law of the place of performance, and a contract is enforceable, if lawful by the law of the place of making when made, and if the performance is lawful by the law of the place of performance when due. Certainly that is true of our own law. Restatement of Conflict of Laws, § 360. If the resolution had meant to prescribe otherwise, it would in substance have been an invasion of the prerogative of other states, and would be properly re-

sented as contrary to the implications of mutual comity; we are justified in insisting that a statute must make such an intent plain beyond any doubt. * * * *

Does the pre-Castro resolution effective in 1951 changing method of payment from dollars to pesos abrogate the private contract of insurance here? I do not believe that it does, absent recognition or adoption thereof by the parties which I do not find from the evidence. To grant such effect would of course be contrary to our basic precepts of contract and constitutional law. Defendant cites various cases recognizing actions of foreign countries and contrary to such principles, which point out that the nationals of those countries are bound by their own laws even though they do not comport with our recognized and cherished standards against abrogation of contract and confiscation without due compensation. Many of those cases deal directly with the particular res or property involved, as bank accounts, vessels, etc. See Salinoff v. Standard Oil Co., 262 N.Y. 220, 186 N.E. 679, 89 A.L.R. 345; U. S. v. Belmont, 30 U.S. 324, 81 L. Ed. 1134; Tillman v. Nat'l. City Bank of N.Y., 118 Fed.2d 631; Bernstein v. Van Heyghen, etc., 163 Fed.2d 246; Banco de Espana v. Federal Reserve Bank, 114 Fed.2d 438; Pons v. Republic of Cuba, 294 Fed.2d 925; Pasos v. Pan American Airways, 229 Fed.2d 271; The Clavereck, 264 Fed. 276; American Banana Co. v. United Fruit Co., 213 U.S. 347, 53 L.Ed. 826.

The burden of defendant's argument in this respect is that Cuban nationals are bound by such Cuban laws so as to prevent a decree on the subject contract against defendant. These cases have been studied. The trouble with defendant's contention is the express provision of an independent, private contract here, upon which plaintiff relied and remains entitled to rely and the fact that the evidence shows that payments of premiums were continued to be made in United States dollars in compliance with the terms of the contract so that both parties continued to recognize the contract and not the Cuban resolution. It appears from the evidence that on some occasions pesos may have been used but converted to dollars in making premium payments.

To hold as defendant urges would make it impossible for foreign nationals to rely upon United States contracts and the express provisions thereof which would be reasonable inducements to such contracts. Neither can this court accept a proposition that would be in effect unilateral in avoiding liability. Seizure of defendant's business as unfortunate and abhorrent as it may be, is perhaps an incident risk of defendant doing business in a revolutionary climate. The seizure was of the defendant's — not the plaintiff's — interests and is not the same as the cases which

defendant cites regarding confiscation of property which was the very subject matter of such other suits. Nor is there proof here of a novation which might effectively substitute the foreign government for the defendant as insurer as in Tillman v. National City Bank of N. Y., supra. Mutuality is of course an essential to a novation.

The case of Dougherty v. Equitable Life Assurance Society, 226 N.Y. 71, 193 N.E. 897, cited by defendant as in point, is distinguished by the express provisions in the contracts there that they were payable in Russian rubles from funds in Russia and were to be controlled by Russian law. Similarly Heinne v. N.Y. Life Ins. Co., 50 Fed.2d 382, is distinguished where policies provided for payment in German marks. The Dougherty opinion notes at page 899 — "The right to a sum of money due upon contract is to be determined by the terms of that contract the world over."

The court cannot justify a tendered distinction which would deny justice to Cuban nationals under these circumstances and rejects the contention that the courts of this country should not afford a forum to these distressed plaintiffs who find themselves homeless and without remedy in their own country. We would not forget the inscription on the Statue of Liberty from another great and grateful people, of France, in 1884 —

"Not like the brazen giant of Greek fame,
With conquering limbs astride from land to land;
Here at our sea-washed, sunset gates shall stand
A mighty woman with a torch, whose flame
Is the imprisoned lightning, and her name
Mother of Exiles. From her beacon-hand
Glows world-wide welcome; her mild eyes command
The air-bridged harbor that twin cities frame.
'Keep ancient lands, your storied pomp' cries she
With silent lips. 'Give me your tired, your poor,
Your huddled masses yearning to breathe free,
The wretched refuse of your teeming shore.
Send these, the homeless, tempest-tost to me,
I lift my lamp beside the golden door!' "

"The New Colossus" by Emma Lazarus.

We are still worthy of those challenging words in these present challenging days.

Accordingly the court finds and it is ordered that the plaintiff is entitled to pay and the defendant is required to accept the payment of premiums in United States dollars in accordance with

the terms of the policy of insurance herein questioned and that such policy is in full force and effect upon payment of tenders made and all premiums due to date and that the respective parties are bound by all the terms thereof, and that upon maturity, if all payments of premiums and requirements of plaintiff be met, the defendant will become obligated to the plaintiff in accordance with the terms of said policy.

It is further ordered that plaintiff is entitled to recover and that he do have and recover of and from the defendant an attorney's fee for services herein rendered in a sum to be fixed and awarded against the defendant as a reasonable attorney's fee herein upon testimony thereon being presented or upon affidavits if agreed by counsel.