### THE REGENT.

No. 16052.

District Court, E. D. New York.

June 28, 1946.

See also 57 F.Supp. 242.

Charles Recht, of New York City, co-trustee.

David Drucker, of New York City, for libellant.

Maurice Finkelstein, of New York City, for Trustee Recht.

Harry D. Thirkield, of New York City, for Trustee Kearns.

P. A. Beck, of New York City, for Daniel F. Young, Inc.

Bernard Reis & Co., pro se.

GALSTON, District Judge.

The matter before the court consists of applications for allowances by the following persons and in the following amounts:

| | |
|---|---|
| Charles Recht | $49,800. |
| David Drucker | 10,000. |
| Maurice Finkelstein | 1,500. |
| Bernard Reis & Company | 19,713. |
| Harry D. Thirkield | 16,000. |
| P. A. Beck | 7,500. |

All of these applications are opposed on the one hand by the Alien Property Custodian on the ground that the amounts sought are grossly excessive, and on the other by one Janis Zalcmanis on the ground that the court had no jurisdiction in the suit.

For an adequate understanding of questions raised by Zalcmanis, it is perhaps desirable to review something of the history of this litigation.

On September 24, 1940, David Drucker, as proctor for the libellant, filed a possessory libel and secured an attachment against the vessel. The libel was verified by the then master of the S. S. Regent. On October 2, 1940, an answer was filed by Daniel F. Young, Inc., as claimant. In the answer it was alleged that Daniel F. Young, Inc., had been appointed, by the then duly accredited Minister of Latvia to the United States, as trustee of said vessel, and was the proper recipient of all moneys due or to become due to the owner from the operation of the vessel or otherwise. The issues were tried and a decision rendered dismissing the libel, D.C., 35 F.Supp. 985. However, no decree was submitted pursuant to the terms of the court's decision. Instead the parties entered into a stipulation which provided for the operation of the S. S. Regent by Joseph G. Kearns, an officer of Daniel F. Young, Inc., and Charles Recht, an attorney representing the libellant. The stipulation further provided that Daniel F. Young, Inc., be appointed by the joint trustees as the operating agent of the vessel, and that the depositions of the libellant and its officers and directors might be taken by the libellant within a period of six months. The stipulation was signed on January 14, 1941, and on the basis of the stipulation the order was entered by the court to carry out the terms of the stipulation.

First then as to the issue of jurisdiction raised by Zalcmanis: It is apparent that this court, on the filing of the libel and resulting attachment, acquired jurisdiction of the res. The trustees operated the vessel under charter parties for a number of voyages before she was attacked by an enemy torpedo and sunk. The vessel was well insured and the insurance moneys were paid to the trustees. There is nothing in the foregoing which shows that the court lost jurisdiction once the res was attached.

The Zalcmanis citation of Pinckney v. Hungaria, C.C., 42 F. 510, discloses a different set of facts. The case holds merely that the court has no jurisdiction of a libel

where at the time of the service of the warrant of arrest the vessel was without the limits of the district. That is not the case here.

Nor does the other authority cited by Zalcmanis, The Denny, 3 Cir., 127 F.2d 404, assist Zalcmanis in his assertion that the court lost jurisdiction. That case was one in which the court had to consider the matter of jurisdiction after a libel had been dismissed and no appeal from the dismissal filed for almost three months thereafter, and no supersedeas bond ever filed. The court held that neither the district court nor the circuit court of appeals then had jurisdiction in rem which would support a decree awarding possession of the vessel and cargo. Again the facts surrounding the Regent and its operation were wholly different from those cited in The Denny.

On November 6, 1942, a petition by the Consul General of Latvia to intervene in the possessory libel was denied and the trustees were instructed to hold the trust fund intact, pending the entry of a final decree, and to make no disbursements of any kind except on application to the court, The Regent, D.C., 47 F.Supp. 995.

The second issue raised is as to the authority of Daniel F. Young, Inc., to sign the stipulation on which the order appointing the trustee was obtained. At the time the stipulation was entered into, Latvia had been seized and was occupied and controlled by the Soviet Government, and the Latvian Consul in New York appointed Daniel F. Young, Inc., by letter dated August 22, 1940, to assume full control over the vessel. The power of the Latvian Consul to appoint Daniel F. Young, Inc., has not been contested. Indeed Mr. Law, representing Zalcmanis at the hearing on June 14, 1946, while asserting that the Consul did not recognize the trusteeship, did admit that he recognized Daniel F. Young, Inc., as the trustee for the owner in the operation of the ship. So far as the court understood at the time of the making of the order based on the stipulation of the parties, there was nothing to indicate that Daniel F. Young, Inc., was not empowered to enter into the stipulation formally executed by the proctor for claimant and respondent. Whatever the claimant and respondent did at that time appears to have been fully known to the consular or ministerial office of the Latvian Government. If Young, Inc., exceeded its powers, and if such exercise of powers was to the damage of the owners of the vessel, presumably the owners have an action against Young, Inc.; but that matter is not before this court. We have to deal here with a situation created if not with the expressed consent of the Latvian Minister or Latvian Consul, at least with their knowledge. And indeed no move was made by the Consul General, who was also Minister Plenipotentiary and Envoy Extraordinary to the United States, to void the trust until August 8, 1942, after the vessel had been operated and indeed sunk.

█ It would be inequitable in these circumstances to decline reasonably to compensate those who had contributed to the operation of the Regent and the management of its affairs. Accordingly the following allowances are made:

To Charles Recht, the sum of $20,000, less the sum of $3,000, heretofore paid on account.

To David Drucker, $5,000, less the sum of $1,000 heretofore allowed on account.

To Maurice Finkelstein, $1,000.

To Bernard Reis & Company, $8,000.

To Harry D. Thirkield, $6,500, less the sum of $5,333.33 heretofore allowed.

█ Since the services rendered by P. A. Beck were on behalf of Daniel F. Young, Inc., in the proceedings initiated by Charles Recht as trustee to surcharge Daniel F. Young, Inc., there is no indication that Mr. Beck contributed to the trust fund. Accordingly his application must be denied. If Mr. Thirkield saw fit to call in Mr. Beck to assist him, it was without the authority of the court, and there is no apparent ground for believing that each trustee required more than one counsel. This consideration is not in contradiction of allowances to Drucker and Finkelstein, since at the time of the employment of Finkelstein by Recht, Drucker's services had long since terminated. Settle order on notice.