SIEGFRIED DEUTSCH, Appellant, v. FLORES B. ROY and Others, Respondents.

First Department, June 12, 1931.

*Henry C. Burnstine* of counsel [*Burnstine & Geist*, attorneys], for the appellant.

*J. M. Cohen* of counsel [*Louis Susman* with him on the brief, attorney], for the respondents.

MARTIN, J.  By this action the plaintiff is endeavoring to cancel and set aside the settlement and discharge for $5,000 of a judgment which with interest amounts to over $40,000, upon the ground that such settlement and discharge were procured through fraud.  The plaintiff also seeks to declare the real property of defendant Kellou Realty Corporation subject to the lien of such reinstated judgment, upon the ground that the defendant Benjamin Roy, one of the judgment debtors, owned all the stock of the said corporation and the transfer to it of said realty was a part of the conspiracy and fraud.

During the World War the plaintiff herein and one Frederick Bangerter were copartners in the business of manufacturing snap fasteners, under the name of Hero Snap Fastener Company.  After purchasing Bangerter's interest in the business the plaintiff discovered certain irregularities upon Bangerter's part, and brought an action in the Supreme Court, New York county, against him for an accounting.  In April, 1919, the court referred the issues in that action to a referee.  In June, 1920, while the reference was still open, Bangerter asked that it be adjourned until the fall so that he might go to Europe to visit for the last time his aged parents. This was agreed to under an arrangement whereby Bangerter pledged himself to return on or about October 1, 1920, to resume

the hearings. Bangerter, however, not only failed to return to this country on or about October 1, 1920, but nothing was thereafter heard from him, even by his attorney. The hearings before the referee were resumed in Bangerter's absence, his attorney refusing to attend thereon.

The reference continued and, in December, 1921, was brought to a close, resulting in a report finding that Bangerter, as copartner of Deutsch, had wrongfully and fraudulently appropriated to himself and failed to account for moneys belonging to the coadventure and copartners amounting to approximately $190,000. The court thereafter confirmed the report and judgment was entered in May, 1923, against Bangerter for the principal sum, together with interest and allowances aggregating nearly $250,000.

When it was sought, however, to satisfy the judgment, it was discovered that Bangerter, who had large real estate and other interests in New York, had liquidated and disposed of them, taking all of the proceeds to Europe and that there remained here absolutely nothing from which the judgment could be even partly satisfied. It was discovered that the daughter of Frederick Bangerter, Flores B. Roy, and her husband, Benjamin Roy, had aided and abetted Bangerter in disposing of his property and had benefited thereby.

Prior to leaving this country, Bangerter had presented to his daughter and son-in-law a substantial stock interest in two apartments in a large co-operative apartment house at 418 Central Park West, New York city, and an action was thereupon begun in the Supreme Court, New York county, against Benjamin Roy, his wife and the defendant Bangerter to set aside that gift as fraudulent. That case was tried in the Supreme Court and a judgment was entered on July 1, 1926, setting aside the transfer, which judgment, among other things, "adjudged and decreed that the defendants Flores B. Roy and Benjamin Roy account to plaintiff and pay over to him the value of the property aforesaid, amounting to $22,300, together with all income therefrom and interest thereon to date, amounting to $15,783.31, making the total sum of $38,084.31." When this judgment was entered, the plaintiff's attorneys endeavored to collect the amount thereof but investigations disclosed that the Roys had both disappeared.

The appellant says that in this situation, with all trace of the Roys lost, plaintiff's attorneys were thereafter approached first by the defendant Breen, a Philadelphia lawyer; then by defendant Ryan, a New York lawyer, and then by both of them, on the subject of settling and discharging the judgment for a comparatively nominal sum. In the course of these negotiations,

various material statements and representations upon knowledge were made by the attorneys to plaintiff's attorneys, and the settlement was made relying upon the truth thereof. A considerable time after the consummation of this agreement, and as a result of information that the statements and representations were wholly false and fraudulent and the result of a conspiracy among the individual defendants herein, this action was brought. Pursuant to the order of the court, the defendants Roy and one of the attorneys were examined before trial and the entire scheme to defraud was disclosed.

The plaintiff appellant points out that when he attempted at the trial to establish by the depositions taken before trial the false and fraudulent nature of the statements and the fraudulent conspiracy pursuant to which they were made, all the damaging parts of the depositions were excluded.

In dismissing the complaint, the trial judge predicated his position upon the proposition that statements and representations of defendants' attorneys were expressions of opinion, as to which they were immune from responsibility, and on which plaintiff's attorneys had no right to rely.

Proof of the statements and representations made rests upon the testimony of one of plaintiff's attorneys, and the correspondence between his firm and the attorneys for the Roys, introduced in evidence in the course of his examination. There was considerable correspondence between the attorneys in this action from which the plaintiff's attorneys were justified in believing the statements that the judgment in question was absolutely worthless.

On September 23, 1927, the plaintiff's attorneys wrote Breen as follows: " Both Mr. Ryan and you yourself have given us absolute assurance that the judgment in this matter is worthless. We have no reason to doubt the assurances that both of you gentlemen have given us. We have advised you heretofore that we have no means of definitely ascertaining what is the financial responsibiity of the judgment debtors at the present time."

One of plaintiff's attorneys testified that the assurances to which he referred in the above letter had been received from the Roys' attorneys in the course of their personal talks with him in which they stated that the Roys were absolutely penniless, that Roy was unable to make a living at the place where Roy was residing outside of New York, but would be able to make a living in New York, and that Mrs. Roy's uncle, Arnold Bangerter, was willing to pay a small amount to effect a settlement, because Mrs. Roy was seriously ill with heart trouble, aggravated by the existence of the judgment, because of which, as they understood, contempt proceed-

ings would lie, if they could be served. That they could not come back to New York while the judgment was outstanding and that Roy was afraid that the situation would result in the death of his wife. The correspondence continued into October between the plaintiff's attorneys and the Roys' attorneys resulting in the waiving of affidavits which the attorneys for the plaintiff had previously demanded.

On October 8, 1928, Breen wrote plaintiff's attorneys that he was getting in touch with his client to have him put up the cash immediately and on the same date Ryan wrote Breen telling him what papers were required. Under date of October 11, 1927, Ryan wrote plaintiff's attorneys that Breen had advised him that he would be in New York city from Philadelphia on October 13, 1927, to close the matter, and that a satisfaction and general release would be required. On October 13, 1927, the settlement was effected and Geist, one of the attorneys for plaintiff, gave Breen a letter on that date setting forth the transaction. Geist testified that on that occasion both Ryan and Breen came to his office and Breen delivered to him $5,000 in cash; that Geist asked him why he brought so much cash with him from Philadelphia and he said he did not want to bring a certified check, as he thought Geist might refuse it because drawn on a Philadelphia bank, and that he had great difficulty that morning getting the money together from several savings banks; furthermore, that both attorneys for the Roys stated that the settlement was a very advantageous one for plaintiff, and that if he did not accept it, he would never be able to get anything, as the Roys were wholly irresponsible financially, and, if it were not for the fact that Bangerter was putting up the money, nothing would be collected, whereupon Geist stated that he was accepting their assurances that this was the fact. Geist delivered to Breen a general release running to the Roys and an assignment of the judgment to defendant Bangerter.

The excluded evidence of the falsity of the statements of the attorneys and of the conspiracy and fraud pursuant to which they were made, if admitted at the trial, would have established the details of the fraudulent scheme and demonstrated that almost everything testified to as having been said by the attorneys in behalf of the Roys was contrary to the facts.

It was established that Breen made a special trip from Philadelphia to obtain from Roy and pay over to Geist the $5,000 cash, for which he obtained an assignment of the judgment to Bangerter instead of a satisfaction thereof, in order to carry out the fraud, although Ryan was present and could have consummated the settlement. All these matters were established by the

depositions on examination before trial, which were marked for identification, the most important portion of which was excluded by the trial judge, over exceptions by plaintiff's counsel.

The appellant contends that the exclusion of the evidence referred to and the dismissal of the complaint constituted error, and that with the evidence in the record, defendants could not have avoided the rescission of the settlement to which plaintiff was entitled under the settled law.

It would serve no useful purpose to further detail the many fraudulent representations that were made in order to settle this judgment for $5,000. It is important to note, however, that at the time these negotiations were being carried on, the attorneys represented that the Roys lived somewhere in Pennsylvania and that it was difficult, if not almost impossible, to reach them from time to time. As a matter of fact, the Roys lived at Morsemere, N. J., across the river from the borough of The Bronx, and Roy conducted a business in The Bronx, where he might have been found at any time, if it were not for the fact that he conducted this business under the assumed name of Roy Williams. This was all known to the defendants' attorneys conducting the negotiations which brought about this settlement of the $40,000 judgment for the sum of $5,000. In addition, it was known to these attorneys that Roy was in a position to pay a part, if not the whole of the judgment.

It is unnecessary to further advert to the other numerous fraudulent statements testified to have been made by the attorneys to sustain this appeal. We are unable to determine at this time to what extent the attorneys may be liable for the part they took in this transaction. That may be ascertained when the evidence is submitted on the new trial which is made necessary by reason of the fact that a large portion of the evidence was rejected. It may be that the attorneys will be in a position to explain some of the testimony which now places them in such a very unfavorable position.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

FINCH, P. J., McAVOY, O'MALLEY and TOWNLEY, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.