SIEGFRIED DEUTSCH, Appellant, v. FLORES B. ROY and Others, Respondents.

First Department, January 19, 1934.

*Henry C. Burnstine* of counsel [*Burnstine & Geist*, attorney], for the appellant.

*Louis Susman*, for the respondents.

MARTIN, J. The plaintiff brought this action to set aside a settlement for $5,000 of a judgment against the defendants Benjamin and Flores B. Roy for the sum of $38,230.21, upon the ground that the settlement had been procured pursuant to a conspiracy and by the false and fraudulent representations of the defendants.

The principal facts are fully set forth in an opinion heretofore written by this court (232 App. Div. 543) when the case was before us on an appeal from a judgment dismissing the complaint at the close of the plaintiff's case. Upon that record the evidence establishing the fraud appeared to be unanswerable and this court was convinced that the plaintiff was entitled to judgment against all the defendants, except Breen and Ryan, and, therefore, reversed the judgment dismissing the complaint and ordered a new trial. Upon that new trial the court at Special Term dismissed the complaint and the plaintiff has again appealed to this court.

The history of this litigation, tersely stated in the former opinion of this court, gives some idea of the extent to which the defendant Benjamin Roy and his father-in-law, Frederick Bangerter, have gone to defraud the plaintiff and to prevent the collection of a just judgment.

The only substantial change in the record now before the court is additional evidence, a considerable portion of which is documentary, which further emphasizes the misrepresentations that were made by the defendants. The deliberate conspiracy between these defendants is so clearly established by the documentary evidence that it should be unnecessary to devote much space to a restatement of any of the facts. However, the litigation thus far has met with so many obstacles that we deem it advisable to review some of the

evidence to set at rest the contention of the defendants that they were not guilty of a gross fraud.

The record discloses that the defendants Flores B. Roy and Benjamin Roy were anxious to settle a judgment for $38,230.21 which the plaintiff had entered against them. They were fearful that a body execution would be issued. With that in mind the Roys retained an attorney named Ryan with offices in The Bronx, who wrote a letter to the attorneys for the plaintiff offering to settle the judgment. At this point a well-prepared plan appears to have been set in motion. A Philadelphia attorney named Breen wrote to the attorneys for the plaintiff saying that he had been requested by a friend to settle the judgment for a small sum.

A large amount of correspondence passed between the attorneys for the plaintiff and Breen and Ryan and negotiations were carried on for several months. During these negotiations and in the letters written to the attorneys it was represented that the defendants Flores B. Roy and Benjamin Roy were judgment proof; that they lived in Philadelphia, Pa.; that they were not willing to tell just where they resided in that city and were unwilling to appear at the office of the attorneys for the plaintiff in New York, or come into this State; they insisted on carrying on all their negotiations through their attorneys. It was also represented that the money to be paid in settlement of the judgment was in reality to be furnished by a man named Arnold Bangerter and that he was unwilling to pay more than a small sum in settlement.

The negotiations finally reached a point where the plaintiff's attorneys were willing to accept and the defendants to pay $5,000, but the plaintiff, through his attorneys, insisted that the Roys make an affidavit that they had no assets. The negotiations continued and the Roys eventually refused to make the affidavits. It is evident from the record, however, that they never intended to give the affidavits requested and that their attorneys never intended to permit them to make such affidavits.

The attorneys for the plaintiff then stated that they would take the assurances of Benjamin Roy and his attorneys that the Roys had no assets or property and they accepted the $5,000 in settlement.

During this entire period the Roys had property in New York city. Furthermore, they never, at any time, resided in Philadelphia, Pa., but while these negotiations were being conducted they lived in the State of New Jersey, at a place called Morsemere, which is just across the Hudson river from Bronx county. Benjamin Roy daily attended to his business in New York city under the name of Roy Williams which he assumed so that his presence in that city would not be discovered. During this period one of the defendant

attorneys not only knew Benjamin Roy and his whereabouts, but, as his attorney in this matter, was in frequent communication with him and knew that he was carrying on a business in New York city. The other attorney was aware of the fact that the Roys did not live in Philadelphia, Pa., and he also falsely represented to the plaintiff's attorneys that he was negotiating a settlement at the request of a friend of the Roys, whereas in truth, the defendant Benjamin Roy was his real client.

This whole plan to settle this $38,230.21 judgment for the sum of $5,000 upon the ground that the defendants Roy were financially worthless, was accomplished by attorneys who knew that practically every representation they made was without basis in fact.

It is now contended by the defendants that because the attorneys for the plaintiff did not insist upon an affidavit from the Roys, they waived their rights. We find nothing in the record to justify that conclusion. While it is true they accepted the settlement without an affidavit, they received in lieu thereof several positive assurances from the attorneys for the defendants that the Roys were financially worthless; that they had no assets or property and that $5,000 was really more than they could pay, but they were willing to make that payment in order to be relieved of the judgment.

It is important to note that the settlement was made in answer to a letter written by the attorneys for the plaintiff to Ryan on August 25, 1927, part of which reads:

" 3. In the event that at any time hereafter Mr. Deutsch ascertains that any representation as set forth in said affidavits is or was false, Deutsch may rescind the agreement of settlement and take proceedings to reinstate the judgment and have the satisfaction set aside, and apply on account of the judgment the sum of $5,000 paid under the terms of the settlement, and not be obliged, in spite of the fact that he will rescind the contract of settlement, to return or offer to return said sum of $5,000, and thereupon said judgment as so reinstated (but reduced by the sum of $5,000 and accrued interest thereon), shall remain in full force and effect as if no satisfaction of the judgment had been issued or filed."

The plaintiff's waiver of the affidavit or questionnaire was not a license to the defendants to commit a fraud on the plaintiff.

If the settlement was straightforward, as now claimed, why would the parties, including the lawyers, resort to such devious ways and labored efforts to hide the true facts and by subterfuge, concealment and misrepresentation make it appear that one Bangerter, as a friendly act toward Mrs. Roy, his cousin, was settling this judgment, when the fact was that Benjamin Roy, personally, was settling the judgment to avoid a body execution?

The court at Special Term, after hearing all the evidence, dismissed the complaint upon the merits and based its opinion upon the fact that it was convinced that the representations alleged to have been made by the defendants *were in fact not made, and that the settlement was fairly entered into.*

In view of this record it is difficult to account for a finding that the representations claimed to have been made were not made or that the settlement was fairly entered into. A consideration of the documentary evidence, alone, discloses that practically every representation claimed to have been made has been proved.

The following excerpts from some of the correspondence between the parties and their attorneys will demonstrate the well-planned fraud which the defendants and their attorneys perpetrated. The documentary evidence contradicts in nearly every important detail the evidence of defendant Roy and his witnesses and stamps as false many of the explanations which they attempted to offer.

On January 27, 1927, Ryan, the Bronx attorney, wrote to the attorneys for the plaintiff as follows: " We have this date received a letter from Mr. D. Benjamin Roy, who has asked us to represent him and ascertain whether a judgment you have against him, can be settled, and if so, for what amount. * * *

" The judgment debtor informs us that *he will not return to this State* unless the claim is settled, but desires to clear his name, if possible."

Ryan's testimony and his examination before trial disclosed that Roy came to his office and spoke to him about this settlement; Ryan did not receive a letter as stated above. It was not the truth that Roy would " *not* return to this State." He was in New York at the time the above letter was written to the plaintiff's attorneys and Ryan knew that Roy, at that time, was conducting a business in this State, located in Bronx county, the address of which Roy gave to Ryan.

A Philadelphia attorney named James J. Breen then wrote to the attorneys for the plaintiff on March 21, 1927, as follows: " I have been requested by a friend to ascertain if you will accept a small sum and clean up the judgment obtained against one Benjamin Ray."

In his testimony Breen admitted that Roy was his client and the only person whom he represented in this matter. By the wording of the above letter Breen clearly intended to have the attorneys for the plaintiff believe that the offer to settle came, not from the Roys, but from some other person.

In plaintiff's Exhibit No. 4 the attorneys for the plaintiff wrote the Philadelphia lawyer, under date of March 22, 1927, as follows:

" Some time ago we were offered here $5,000, which we declined as it was too small in comparison to the amount of the judgment."

In plaintiff's Exhibit No. 5 the Philadelphia lawyer wrote to the attorneys for the plaintiff, under date of March 29, 1927, as follows: " I showed to my client your letter of March 26th, regarding judgment against Benjamin Roy. He was amazed at its contents, and thinks that there is surely some misunderstanding about any offer of $5,000, in full settlement. He, of course, won't pay any such sum."

This letter shows that Breen was still pretending that his offer of settlement was coming from some one other than Roy, whereas he admitted that Roy was his client and the settlement was, in fact, made and the money paid by Roy.

In plaintiff's Exhibit No. 7, under date of April 6, 1927, the plaintiff's attorneys wrote to Breen in Philadelphia to the following effect: " On the other hand, if you still desire to settle this case on a nominal basis, we shall consider it provided an opportunity is offered us of examining the Roys and determining whether the implied assurance that the offer is the best they can do is correct."

In plaintiff's Exhibit No. 8, under date of April 13, 1927, Ryan wrote the attorneys for plaintiff as follows: " We received this day a letter from Benjamin Roy, whom we met while acting for our client Glen R. Munkers, in the purchase of certain property belonging to a corporation in which said Roy was interested.   *   *   *

" He informs us that *he intends to remain in the State of Pennsylvania, but would return to New York if the judgment could be settled.*"

The facts set forth in the above letter are not true. On the trial Ryan testified that he had his first dealings with a man named Munkers after he met the defendant Roy. He admitted that he never personally met Munkers, who lived somewhere in Portland, Ore., but that he merely prepared and sent him a State franchise tax report to be signed and sworn to and that he had handled a chattel mortgage and other papers for him. In his examination before trial Ryan stated that Roy came to his office on the recommendation of either a friend or through a client named Gerkhart. When Ryan wrote the above letter he knew that Roy was in New York city almost every day.

In plaintiff's Exhibit No. 10 Ryan wrote to plaintiff's attorneys, under date of August 11, 1927, as follows: " The client informs us and we have good reason to believe that he has established a permanent residence in Philadelphia and that he does not desire to meet Mr. Burnsteine, that the reason as he puts it himself, is that he ' feels safe where he is.'

" He informs us that he is willing to pay $3,000 at this time for a release and satisfaction as to himself and his wife, and that he will on notice from us, deposit money with one Harry Breen, a lawyer in Philadelphia to be delivered upon receipt of a proper release and satisfaction."

In his examination before trial Ryan stated that Roy refused to give him his home address, the reason being that he did not trust lawyers; that Ryan formed the opinion that Roy lived in or near Philadelphia because some letters from Roy were mailed in Philadelphia. He stated that none of these envelopes could be produced because it was the custom of his office not to keep any envelopes. He admitted, however, on the trial that Roy had given him a business address as 1089 Leggett avenue, Bronx, to which the letters that were not given personally to Roy were addressed. Roy admitted on the examination before trial that he never lived in Philadelphia.

Under date of August 16, 1927, Ryan wrote the plaintiff's attorneys as set forth in Exhibit No. 13: " We advise the client that if, *as he informed us, he had no property in New York,* he could make an affidavit and the question was as to the amount.

" We suggest that if you desire to accept the offer made, that you kindly prepare either an affidavit or the examination and that you send it to us so that we may send it to the client and make the other arrangements to close the matter."

Inclosed in the above letter was a copy of a letter Ryan said he received from Roy in Philadelphia, the letter is headed " Philadelphia, Pa.," and dated " August 16th, 1927," and reads in part as follows: " I have received your letter of the 13th with the letter from Mr. Geist to you. Unfortunately, my wife opened the same and as she is in very poor health, this caused quite a disturbance. Hereafter, will you kindly address all letters in this matter to Harry Breen, my attorney, in this city. As for myself, my attitude is that they can do whatever they want. *I have no interest in any property nor any kind of assets in New York, nor ever will have, unless this matter is settled.*"

The defendants were unable to produce the original of the above letter said to have been received from Roy. At the time this letter was said to have been written the Roys were not living in Philadelphia, in fact they never resided there. When Roy claims to have written the letter he did have property and assets in New York city.

In plaintiff's Exhibit No. 16, the attorneys for the plaintiff wrote to Ryan, under date of August 26, 1927, as follows: " It is our understanding that your clients are absolutely *judgment-proof at*

*the present time,* and that they have no beneficial interest in any property in the hands of any third person.  \*  \*  \*

" Of course, you understand that the reason why we must insist upon this course of action, is because your clients refuse to submit themselves to an examination before the settlement takes place, so that we may satisfy ourselves that their statements in effect that they are judgment-proof are true and correct."

In plaintiff's Exhibit No. 17, under date of August 25, 1927, the plaintiff's attorneys wrote to Ryan as follows: " 2. That the settlement is made upon the understanding and upon the condition and the express representations of both defendants, Flores B. Roy and Benjamin Roy, that neither of them has any property of any kind, nature or description, or any equitable interest in any property of any kind, character or description, wheresoever situated, and that no third party has any property or any equitable interest in any property of any kind, character or description, wheresoever situated, for the benefit of said defendants Roy or either of them."

After negotiating for some time with reference to the settlement and the affidavits to be given, the matter was finally summed up in a letter written by plaintiff's attorneys to Breen, the Philadelphia lawyer (plaintiff's Exhibit 22), dated September 23, 1927: " *Both Mr. Ryan and you yourself have given us absolute assurance that the judgment in this matter is worthless.* We have no reason to doubt the assurances that both of you gentlemen have given us. We have advised you heretofore that we have no means of definitely ascertaining what is the financial responsibility of the judgment-debtors at the present time. It is natural, therefore, that we should wish to receive some assurance from those who know that the judgment debtors are irresponsible. No better evidence can be offered us than that given us by the judgment debtors themselves.

" We would not have considered any further negotiations in respect to the adjustment of this matter unless we were assured as a condition of acting upon any proposal of settlement that the judgment debtors would give us a statement, under oath, setting forth in detail what, if any, property they now own and formerly owned, and what disposition thereof was made, so that we could satisfy ourselves that no property is held by any third party in trust for their benefit. If such an affidavit will not be submitted as a condition of making this settlement, we cannot come to any other conclusion than that your clients are endeavoring to induce us to purchase a cat in the bag."

In plaintiff's Exhibit No. 24, under date of October 4, 1927, Breen wrote from Philadelphia to plaintiff's attorneys: " Replying

to your letter of September 29th, Re *Deutsch* v. *Roy*, if you insist on our complying with the terms you have laid down, there is no use of us going any further with the matter. If you are willing to accept the sum of $5,000 *on my terms*, I will take up the matter with my clients promptly."

Many similar false and contradictory statements contained in letters sent to the attorneys for the plaintiff could be set forth, but it would serve no useful purpose to add to the volume quoted above covering the entire subject.

There is no doubt that the attorneys for the plaintiff waived the giving of affidavits by the Roys stating that they had no property (which the attorneys for the Roys carefully avoided giving) and accepted the sum of $5,000 upon the express representations and assurances by the Roys' attorneys that the Roys were worthless and judgment-proof, but were willing to pay, through a friend, the sum of $5,000, to get rid of the judgment. These statements were absolutely false and were known by all the defendants to be false.

As already pointed out, the Roys at this time were not worthless, but had property in New York city, which Benjamin Roy managed while in the city almost every day. The Roys did not live in Philadelphia, Pa., but were residing in Morsemere, N. J., just across the river from New York city. To carry out the fraud it was represented that a Philadelphia attorney had been retained on behalf of a friend of the Roys, who was anxious to settle the judgment for a small sum. All the representations that the attorneys and Roy were writing back and forth from Philadelphia were simply part of the fraud. This deception was carried on to such an extent that when the judgment was finally settled, Breen, the Philadelphia attorney, was brought to New York city and paid the money by Roy, who was living in New Jersey. Breen turned the money over to the attorneys for the plaintiff, thus making it appear that the whole matter had been arranged from Philadelphia by Arnold Bangerter. The purpose of this was to ward off all suspicion and avoid revealing the fact that Benjamin Roy was actually carrying on a going business in New York city.

There is no doubt that the attorneys for the plaintiff relied upon the misrepresentations of the defendants as it is not likely that they would have accepted $5,000 if they knew the Roys could pay a larger sum. On this point the letter of Benjamin Roy to Ryan, dated August 16, 1927, is significant. He wrote: " I have no interest in any property nor any kind of assets in New York, nor ever will have, unless this matter is settled."

The court upon the trial dismissed the complaint as to the

defendants Breen and Ryan because no relief was asked against them. We are of the opinion that the dismissal was correct. If Ryan and Breen are liable they are liable for damages for fraud. The rule of damages in such a case is well settled. In *Ochs* v. *Woods* (221 N. Y. 335, at p. 340), in stating the correct rule of damages, the court said: " Through the deceit, plaintiff abandoned his legal right for its nearly valueless substitute. Deceit and injury concurred. The basic principle underlying all rules for the measurement of damages for deceit is indemnity for the actual loss sustained as the direct result of the wrong. The question is what was the value of that with which plaintiff parted and what was the value of that which he received? "

In *Urtz* v. *N. Y. C. & H. R. R. R. Co.* (202 N. Y. 170, 173) the court said: " In an action for the recovery of damages caused by the fraud of the defendant, the plaintiff must allege and prove that he has been injured by the fraud which he charges. The essential constituents of the action are firmly fixed and are tersely stated in *Arthur* v. *Griswold* (55 N. Y. 400), as, ' representations, falsity, *scienter*, deception and injury.' Pecuniary loss to the deceived party is absolutely essential to the maintenance of the action. Fraud and deceit alone do not warrant the recovery of damages. Deceit and injury must concur. (*Taylor* v. *Guest*, 58 N. Y. 262; *Ettlinger* v. *Weil*, 184 N. Y. 179.)"

Assuming for the purpose of this case that this action against Ryan and Breen is for fraud, the proof of damages is wholly inadequate.

The judgment should be affirmed as to defendants Ryan and Breen, without costs to said defendants. The judgment should be reversed as to all other defendants, with costs to plaintiff, and judgment directed for plaintiff against them for the relief demanded in the complaint, with costs.

FINCH, P. J., O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Judgment in favor of defendants John L. Ryan and James J. Breen affirmed, without costs to said defendants. Judgment in favor of defendants Flores B. Roy, Benjamin Roy, Kellou Realty Corporation and Arnold Bangerter reversed, with costs to the plaintiff and judgment directed against said defendants for the relief demanded in the complaint, with costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.