**TOHO BUSSAN KAISHA, LIMITED,**
Plaintiff-Appellant,

v.

**AMERICAN PRESIDENT LINES, LIM-
ITED,** Defendant-Appellee.

**No. 70, Docket 25151.**

United States Court of Appeals
Second Circuit.

Argued Oct. 10, 1958.

Decided March 26, 1959.

420

Lazaar Henkin, New York City (John A. Sullivan, George M. Vetter, Jr., Isaac C. Donner and Cadwalader, Wickersham & Taft, New York City, on the brief), for plaintiff-appellant.

William Warner, New York City (William G. Symmers and Symmers, Fish, Warner & Nicol, New York City, on the brief), for defendant-appellee.

Before CLARK, Chief Judge, and MEDINA and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

This is an appeal from an order of the District Court for the Southern District of New York, by Dimock, J., dismissing plaintiff's action at the close of its case for failure to prove damages in an action for fraud and previous orders by Walsh, J., denying plaintiff's applications for summary judgment.

The principal question is whether the plaintiff in this fraud action may recover the $74,438.30 it advanced in reliance on defendant's fraudulently issued bills of lading which represented that certain newsprint was on board its vessel on a certain date when in fact it was not, without proving that by so doing it had suffered any loss.

Under the law of New York which governs this action, one who has been defrauded is entitled only to be indemnified for his injury and consequently may not recover if he has already recouped his actual pecuniary loss from others. Further, the plaintiff has the burden of establishing that he suffered an actual loss. On this record we find that although plaintiff has been defrauded it has not shown that it suffered any loss. Accordingly we affirm the orders of the district court.

Plaintiff is a corporation organized under the laws of Japan. On October 20, 1951 plaintiff entered into a contract in New York with Trans-America Industries, Inc., to finance and arrange for the importation into Japan of 3,300 short tons of newsprint which, under simultaneously executed contracts, two other Japanese companies had agreed to purchase from Trans-America.

Plaintiff, as required by its contract with Trans-America, had established two irrevocable letters of credit through the Irving Trust Company in New York in favor of Trans-America. These letters

provided for payment against certain documents including on board ocean bills of lading dated on or before January 31, 1952. Payment against bills of lading dated thereafter was to be made only if a letter of credit establishing counter-credits in the amount of 2% of the credits opened by plaintiff were established in Japan by Trans-America in favor of the plaintiff. These counter-credits were to be drawn against by plaintiff in the event Trans-America failed to perform its contract. The letters of credit opened by plaintiff did not require that the newsprint shipped under the required bills of lading conform to the specifications of the underlying purchase contracts. In fact it is undisputed that the shipments did not conform to the contracts, the contracts were cancelled and much litigation has followed, all of which is immaterial to our disposition of this case.

On January 31, 1952, the last date bills could be negotiated against plaintiff's letters of credit without the opening of counter-credits by Trans-America, defendant's New York freight manager, at the request of Trans-America's freight forwarder, authorized the issuance of ten bills of lading certifying that certain newsprint was aboard defendant's vessel. In fact, as defendant's freight manager knew, the newsprint covered by the ten bills was not then aboard the ship but was still on the dock in New York. The falsely dated bills were subsequently presented with accompanying drafts totalling $74,438.30 by Trans-America and its assignee and they were honored by Irving Trust. In turn plaintiff was required to reimburse the Japanese banks which had requested Irving Trust to establish the letters of credit.

Plaintiff's basic position, both at trial and here, is that it is entitled to recover the $74,438.30 from defendant regardless of the amount of consideration it received from the sale of the newsprint or the amount of indemnification it recovered from Trans-America.

During plaintiff's case it was developed on cross-examination of Yasuhiro Ishii, an employee of plaintiff, that the newsprint covered by the ten bills of lading came into plaintiff's possession sometime after it reached Japan and that plaintiff sold it to various concerns. The plaintiff offered no admissible evidence as to the proceeds of these sales.

It was also established during the plaintiff's case that the plaintiff had secured a judgment against Trans-America and certain individuals in the New York courts relating to this shipment and others. The plaintiff offered no proof regarding the satisfaction of this judgment.[1]

As the plaintiff failed to show that it had suffered any loss because of the fraudulently issued bills of lading, Judge Dimock dismissed the complaint when the plaintiff had completed its proof.

Plaintiff maintains that defendant, as a tortfeasor, cannot avail itself of indemnification plaintiff has received from collateral sources. We do not agree.

■ Since the misrepresentation in this case occurred in New York, a common law fraud action is governed by the law of New York. Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, M. Salimoff & Co. v. Standard Oil Co. of New York, 1933, 262 N.Y. 220, 186 N.E. 679, 89 A.L.R. 345.

■■ The New York decisions make it plain that the recovery allowable for fraud is not punitive in nature. The plaintiff is entitled to be indemnified only for actual pecuniary loss. Hanlon v.

---

1. In its reply brief plaintiff states that it was awarded a judgment of $260,000 in the New York State courts against Trans-America, Inc. and certain of its officers. Counsel stated that the judgment was settled for $130,000 and that up to that time $90,000 of this settlement had been paid. Of course we have no information as to how much of this recovery could properly be considered to apply to the shipment covered by the ten bills of lading here involved. As we point out below this is one of the deficiencies in plaintiff's proof.

Macfadden Publications, 1951, 302 N.Y. 502, 511, 99 N.E.2d 546, 24 A.L.R.2d 733; Ross v. Preston, 1944, 292 N.Y. 433, 436, 55 N.E.2d 490; Sager v. Friedman, 1936, 270 N.Y. 472, 480–481, 1 N.E.2d 971; see also Reno v. Bull, 1919, 226 N.Y. 546, 553, 124 N.E. 144, (even possible profits may not be recovered). We therefore find no merit in plaintiff's principal contention.

■ The next question raised by this appeal is who has the burden of establishing plaintiff's actual pecuniary loss. This question is also governed by the law of New York. Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645; Sampson v. Channell, 1 Cir., 1940, 110 F.2d 754, 128 A.L.R. 394, certiorari denied 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415.

■ Judge Dimock dismissed the plaintiff's action at the close of its case on the ground that it had failed to prove damages. We think Judge Dimock was correct. Under the law of New York plaintiff has the burden of establishing that the amount it paid out on the ten false bills exceeded any sum or sums which it may have received on account of this transaction. Merely proving that the money was paid out in reliance on false bills of lading is only part of the story. Sager v. Friedman, supra, 270 N.Y. at page 482, 1 N.E.2d at page 974; Deutsch v. Roy, 1st Dept. 1934, 239 App. Div. 714, 268 N.Y.S. 606, affirmed 1935, 269 N.Y. 508, 199 N.E. 510; Woolson v. Waite, 158 Misc. 764, 768, 286 N.Y.S. 619, affirmed 4th Dept. 1936, 247 App. Div. 855, 286 N.Y.S. 624. Here the record does not show that the plaintiff suffered any actual pecuniary loss.

Moreover, defendant, by cross-examination of plaintiff's witness, elicited both that plaintiff had sold the newsprint and that it had obtained a judgment against Trans-America with respect to the newsprint. But plaintiff never established the amount it received from the sale or whether its judgment had in whole or in part been satisfied, although obviously this information was in its possession.

Plaintiff contends, however, that it was unable to sustain its burden of proof because Judge Dimock erroneously excluded its offers of proof as to the extent of its actual loss. Specifically, plaintiff complains that Judge Dimock erred in excluding (1) the opinion testimony of plaintiff's witness, Yasuhiro Ishii, as to the value of the goods; (2) certain mill weight certificates identifying the newsprint shipped under the false bills and thus laying the foundation for expert testimony as to the value of the goods; (3) photostatic copies of plaintiff's books of account which apparently reflected the amount received from its sale of newsprint; and (4) the pre-trial deposition of Ishii.

■ Judge Dimock excluded Mr. Ishii's opinion on the ground that his brief glance at the many rolls of newsprint as it lay on the dock in New York did not provide a sufficient opportunity for him to identify the nature and quality of the goods shipped under the false bills and thus his opinion as to the value of the goods was without foundation. While we doubt whether opinion testimony as to the value of the newsprint, even where proper foundation has been laid, would satisfy plaintiff's burden of showing its actual loss in view of its admission that the paper was sold in Japan, we need not rest our decision on this ground. We hold that Judge Dimock properly ruled that Ishii's brief examination of newsprint packed and stored on New York docks did not provide a sufficient basis for him to express any opinion of the value of the newsprint.

■ The mill certificates were excluded because plaintiff failed to produce someone from the mill to authenticate them. Judge Dimock properly ruled that the mill weight certificates could not be admitted unless so authenticated.

■ The photostats which plaintiff sought to introduce into evidence were copies of books of account kept in the ordinary course of business. The original books themselves would be admissible, but the photostats, prepared

specially for the litigation, are not within either the federal or New York State business entry statutes, 28 U.S.C. § 1732 [2] (1952); New York Civil Practice Act, §§ 374–a, 374–b,[3] and therefore were properly excluded. The provisions of those acts permitting use of photostats refer only to situations where photostats, microfilms, or the like, have been made in the ordinary course of business and not in preparation for trial. No sufficient foundation was laid for their admission on this ground.

 Plaintiff sought, however, to have the photostats admitted under § 344 of the New York Civil Practice Act, which provides that the specific statutory methods of proving the contents of documents shall not preclude proof according to the rules of the common law. Although § 344 is clearly applicable, by reason of Rule 43(a) Federal Rules of Civil Procedure, 28 U.S.C.A., it is plain that at common law the plaintiff is bound by the so-called "best evidence" rule to introduce the original books of account. There are, generally speaking, two exceptions to the application of this rule, whose underlying aim is, whenever reasonably possible, to allow the opponent to examine the documentary original. 4 Wigmore § 1192. The first arises if the original document is unavailable for production in court. If, for example, the original is in the hands of a third party who will not voluntarily surrender it and who is not subject to the court's process, or if it has been lost or destroyed without the connivance of the proponent, then a properly authenticated copy will suffice. 4 Wigmore §§ 1193–1198; 1211–1218. In this case, however, these books were in plaintiff's possession, and no reason was offered why plaintiff could not have made the original books available. Moreover plaintiff's own witness testified that the original books were separately kept for the newsprint transaction which indicates that they could have been produced at trial without disruption to the plaintiff's business. Lest it nevertheless be thought that this is an overly technical application of the rule, we note that plaintiff did not request that this non-jury action be continued to permit him time to secure the necessary documents.

The second exception to the application of the rule is for so-called duplicate

2. 28 U.S.C. § 1732 provides:

"(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter. * * *

"(b) If any business, institution, member of a profession or calling, or any department or agency of government, in the regular course of business or activity has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence, or event, and in the regular course of business has caused any or all of the same to be recorded, copied, or reproduced by any photographic, photostatic, microfilm, micro-card, miniature

photographic, or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless held in a custodial or fiduciary capacity or unless its preservation is required by law. Such reproduction, when satisfactorily identified, is as admissible in evidence as the original itself in any judicial or administrative proceeding whether the original is in existence or not and an enlargement or facsimile of such reproduction is likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of court. The introduction of a reproduced record, enlargement, or facsimile does not preclude admission of the original. This subsection shall not be construed to exclude from evidence any document or copy thereof which is otherwise admissible under the rules of evidence."

3. The New York Business Record statute is substantially identical with the federal statute quoted above in footnote 2, at least insofar as it is relevant here.

originals. 4 Wigmore §§ 1232–1240. These are documents which, because of the nature and time of their production are in every regard indistinguishable from each other. Examples of such documents are carbons and the typed originals. United States v. Manton, 2 Cir., 1939, 107 F.2d 834, 845; McCormick, Evidence (1954) at 421. Photostats made at some later time are not duplicate originals. While they are frequently substituted by consent of the parties where the original is available, that is quite another matter from receiving them, over objection, where the original is in Japan and no reason is given for not producing it. How could there be any guarantee that they are accurate reproductions of all that may be relevant? Here the plaintiff has never attempted to answer that question.

We are fully mindful of the discussion in United States v. Manton, supra, 107 F.2d at page 845. There Justice Sutherland in commenting on the admissibility of photostatic reproductions of checks by a recordak machine made by a bank in the regular course of business said:

"And if it appear, as it does here, that what is called sceondary evidence is clearly equal in probative value to what is called the primary proof, and that fraud or imposition, reasonably, is not to be feared, the reason upon which the best evidence rule rests ceases, with the consequence that in that situation the rule itself must cease to be applicable, in consonance with the well established maxim—cessante ratione legis, cessat ipsa lex.

"An over-technical and strained application of the best evidence rule serves only to hamper the inquiry without at all advancing the cause of truth."

We fully endorse the position there taken. But in cases such as this there are dangers of "fraud" and "imposition" in the use of photostats prepared specifically for trial and not made in the regular course of business. The Trial Judge, recognizing these dangers, properly refused to admit the photostats in the exercise of his discretion. We cannot now say that this discretion was abused.

 Finally, plaintiff sought to introduce the pre-trial deposition of Mr. Ishii, which was taken at the instance of defendant, on the ground that defendant's introduction into evidence of part of that deposition entitled plaintiff to introduce the balance. The deposition included certain extracts from plaintiff's records which reflected the amount plaintiff received from the sale of the newsprint. The extracts were specially prepared for the litigation. Judge Dimock excluded plaintiff's offer of the entire deposition after defendant, at the court's suggestion, withdrew the part which it had already read into the record. This case was tried before Judge Dimock without a jury and his determination to allow the defendant to withdraw the deposition was within the proper exercise of his discretion. In any event, had the part of the deposition offered by defendant remained in evidence, defendant could still have objected to the admission of the extracts incorporated in the deposition.

The net result is that although the plaintiff had recovered some monies against its payment of $74,438.30, it did not offer competent proof of what was realized from the paper and it chose to offer no proof whatsoever of any recovery from Trans-America on its judgment secured in the New York courts.

If the plaintiff chose not to produce the original books it was not without means of producing admissible evidence of the proceeds from the sale of the paper. One of the plaintiff's officers with knowledge of the facts could have testified or a commission could have issued to take such testimony or the testimony of the purchaser or purchasers. As it was the plaintiff had taken no steps to insure that proper proof regarding the sale of the paper would be available for the trial, and it did not ask for additional time to produce witnesses with knowledge of the facts.

Our holding that it was incumbent on the plaintiff to prove its loss, if any, disposes of the appellant's appeal from the orders denying its motions for summary judgment. Obviously the matter of loss had to await proof at the trial. Judge Walsh correctly denied summary judgment and we affirm his orders. D.C. S.D.N.Y.1957, 155 F.Supp. 886.

The disposition of the appeal makes it unnecessary to pass on the other defenses raised by the appellee that the plaintiff's losses, if any, were not due to the fraudulent issuance of the bills of lading, that the complaint failed to state a cause of action under the Federal Bills of Lading Act, 39 Stat. 538–545 (1916), 49 U.S. C.A. §§ 81–124 and that the action was time-barred under § 3 of the Carriage of Goods by Sea Act, 49 Stat. 1208 (1936), 46 U.S.C.A. § 1303.

Accordingly, the orders of the District Court for the Southern District of New York denying plaintiff's motions for summary judgment and dismissing plaintiff's action at the close of its case are affirmed.

CLARK, Chief Judge (dissenting).

As the opinion in substance concedes, we have reached a highly anomalous result through resort to the most technical of legal rulings. Defendant concededly committed a wrong in issuing false bills of lading; the fact that it may have felt compelled to its course by the exigencies of business competition does not lessen its responsibility to plaintiff, which clearly suffered loss. True, the amount of the loss was never fixed; and here plaintiff's counsel must bear some responsibility for the contretemps. For he stuck rigidly to his conception of the law that the burden of proof was on the defendant, even after the court had ruled otherwise. But I do not believe it a cardinal sin that a lawyer, faced with trial exigencies accentuated by an unsympathetic judge, fails to make a quick mental adjustment involving a shift of legal position. Further it is not our practice to penalize a client throughout both trial and appeal for tactical errors of his counsel. Here to sustain the result we are turning back the use of ordinary business practices in court in rejecting photostat copies of books of account duly verified by the testimony of a live witness. And so an inequitable decision is upheld by an evidence ruling out of keeping with modern business life.

Although perhaps we might be able to compute the damage, I think it entirely proper to remand this case for further proceedings below, particularly as certain defenses of illegality were never reached. But elementary considerations of fairness and equity require at least a remand, and not a final judgment for the defaulting defendant. And if there is any question as to the authenticity of the photostats—none is really indicated —it can be settled with exactitude and justice on such remand. It is to be noted that the trial judge rejected the photostats not in the exercise of some "discretion" as to their falsity, as the opinion suggests, but because he held copies inadmissible—a decision erroneous according to modern standards, as the opinion concedes. I would reverse and remand.