FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 OCT -1 AM 8: 32

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76534-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HELEN JOLENE NELSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: <u>October 1, 2018</u> |
| | ) | |

SMITH, J. — Helen Jolene Nelson appeals her jury conviction for attempted theft of a motor vehicle. Ms. Nelson argues that the trial court abused its discretion by admitting an officer's testimony describing the contents of a surveillance video, and by admitting five still photographs of the surveillance video, the original of which was not produced. Because it was not unfair under the circumstances to admit the photographs, which were otherwise admissible under ER 1003, the trial court did not abuse its discretion by admitting them. Furthermore, admitting the officer's testimony was harmless error. We affirm.

<u>FACTS</u>

The State charged Ms. Nelson by information with attempted theft of a motor vehicle. At trial, the State presented evidence that during the early morning hours of October 11, 2015, a woman tried to steal a car from the parking lot of a Tesoro station in Anacortes; that this woman left two bags in the car when

she ran away after being chased by the station clerk; and that these bags were later recognized by police officers as the same bags that Ms. Nelson had been carrying with her when officers had contact with her earlier that morning.

The State also presented the testimony of Officer Edwin Scheepers, who visited the Tesoro station later in the day to view surveillance footage of the suspect. Officer Scheepers explained that the surveillance video was not available to download at the store, that he assumed that he would not be able to get a copy of the whole video, and that he understood that "for a lot of the stores it's a real difficult process for them to reproduce the footage."[1] Officer Scheepers described what he saw on the surveillance video, and the trial court admitted five still photographs that Officer Scheepers took of the video.

The jury convicted Ms. Nelson as charged, and the trial court sentenced Ms. Nelson to 12 months and one day of confinement. Ms. Nelson appeals.

## ANALYSIS

### Admissibility of Still Photographs

Ms. Nelson argues that the trial court erred by admitting the five still photographs that Officer Scheepers took of the surveillance video. We disagree.

Under the "best evidence rule,"[2] to prove the content of a videotape, the original videotape is ordinarily required, unless an exception applies.[3] One such

---

[1] Report of Proceedings (RP) (Jan. 23-24, 2017) at 139-40, 151-52.
[2] ER 1001 et seq.
[3] ER 1002 ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by rules adopted by the Supreme Court of this state or by statute."); ER 1001(b) ("photograph" includes videotape).

exception is found in ER 1003, which provides: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."[4] We review challenges to a court's decision to admit evidence for abuse of discretion.[5] A trial court abuses its discretion if its ruling is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.[6]

Ms. Nelson does not contest the authenticity of the original videotape. But, she argues that the still photographs are not "duplicates" under ER 1001(d) because they were not produced "through some technique that 'accurately reproduce[s] the original.'"[7] We disagree. ER 1001(d) provides that "[a] 'duplicate' is a counterpart produced by the same impression as the original, . . . or by means of photography . . . ."[8] Officer Scheepers' uncontroverted testimony is that he created the still photographs from the surveillance video by means of photography. Therefore, the still photographs are duplicates.[9]

Ms. Nelson next argues that it was "unfair" to admit the still photographs because they constituted only a partial duplicate of the original videotape, citing

---

[4] ER 1003.
[5] State v. Finch, 137 Wn.2d 792, 810, 975 P.2d 967 (1999).
[6] Id.
[7] Brief of Appellant at 12 (quoting ER 1001(d)).
[8] ER 1001(d) (emphasis added)).
[9] ER 1001(d); see also U.S. v. Perry, 925 F.2d 1077, 1082 (8th Cir. 1991) (a still photographic image made from a videotape recording is a duplicate under Fed. R. Evid. 1001(4)); Cf. State v. Andrews, 172 Wn. App. 703, 707-708, 293 P.3d 1203 (2013) (photographs of text messages admissible under ER 1003).

Amoco Production Co. v. United States,[10] Toho Bussan Kaisha, Ltd. v. American President Lines, Ltd.,[11] and United States v. Alexander.[12] These cases are not persuasive here. In Alexander, the court concluded that secondary evidence of the terms of a check was not admissible where the government failed to give any explanation of the failure to produce the check itself.[13] And in Toho Bussan Kaisha, the court concluded that the trial court did not abuse its discretion by refusing to admit photostats of a document, observing that the original document was in Japan and no reason was given for not producing it.[14] Neither Alexander nor Toho Bussan Kaisha was analyzed under ER 1003, which permits the admission of a duplicate to the same extent as the original, regardless whether the original is accounted for.[15] Accordingly, Alexander and Toho Bussan Kaisha do not control.[16]

Ms. Nelson's reliance on Amoco Production is also misplaced. There, the issue in dispute was whether a 1942 deed contained a reservation of certain mineral rights.[17] The original deed was lost, and the appellate court upheld the trial court's refusal to admit a duplicate conformed copy of the deed "because the most critical part of the original conformed copy (the reservation clause) is not

---

[10] 619 F.2d 1383 (10th Cir. 1980).
[11] 265 F.2d 418 (2d Cir. 1959)
[12] 326 F.2d 736 (4th Cir. 1964).
[13] Id. at 739.
[14] Toho Bussan Kaisha, 265 F.2d at 424.
[15] ER 1003.
[16] The Toho Bussan Kaisha court also concluded that photostats of a document made at some later time were not duplicates, but, as discussed above, a "duplicate" is now expressly defined in the Evidence Rules to include a counterpart produced by means of photography.
[17] Amoco Production, 619 F.2d at 1389.

4

completely reproduced in the 'duplicate.'"[18] Here, in contrast, Ms. Nelson's argument that the still photographs may have omitted something exculpatory is entirely speculative. There is no evidence that Officer Scheepers "cherry-picked" the images he took from the videotape, as Ms. Nelson contends. Officer Scheepers' uncontroverted testimony was that he did not know Ms. Nelson, was not involved in the earlier contact with Ms. Nelson that occurred a short time before the incident at the Tesoro station, and was simply "looking for somebody who had a couple bags with him, distinctive bags."[19] Furthermore, when describing the still photographs, Officer Scheepers did not offer any opinions as to the identity of the subject in the photographs. The trial court did not abuse its discretion by admitting the still photographs.

*Admission of Officer Scheepers' Testimony*

Ms. Nelson also argues that the trial court erred by admitting Officer Scheepers' testimony describing what he recalled seeing on the surveillance video. We agree, but hold that the error was harmless.

ER 1004(a) sets forth another exception to the general rule that an original is required to prove the content of a videotape. It provides: "The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if: . . . [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith[.]"[20] By its terms, ER 1004(a) requires a showing that the original videotape was unavailable because

---

[18] Id. at 1391
[19] RP (Jan. 23-24, 2017) at 140, 143.
[20] ER 1004(a).

5

it was lost or destroyed without bad faith.[21] On this point, federal case law is instructive because ER 1004(a) mirrors Fed. R. Evid. 1004(1),[22] regarding which one federal court observed:

> [I]n order for secondary evidence of the contents of the writings to be admissible, the proponent must make a threshold showing that those two elements, loss or destruction of the documents and the absence of bad-faith, have been met. . . . In order to prove that the documents have been lost or destroyed the proponent may use circumstantial evidence such as evidence of a diligent but unsuccessful search for the document.[23]

Here, Officer Scheepers testified that his *understanding* was "that for a lot of the stores it's a real difficult process for them to reproduce the footage" and that he could not reproduce the surveillance video *at the store*.[24] He also testified that downloading the surveillance video was not, to the best of his recollection, a possibility *at the time that he visited the Tesoro station*, and that "[a] lot of the stores in Anacortes take a very long time to get back to us, so we just take still photographs . . . ."[25] He further confirmed that it was his assumption that he was not able to get a copy or reproduction of the whole surveillance video, and that nothing in his report indicated that he tried. Officer Scheepers did

---

[21] ROBERT H. ARONSON & MAUREEN A. HOWARD, THE LAW OF EVIDENCE IN WASHINGTON § 4.05[1] (rev. 5th ed. Supp. 2016) ("*Once the original is shown to be unavailable* under ER 1004, any form of proof is permissible . . . ." (emphasis added)); see also 5C KARL B. TEGLAND, WASHINGTON PRACTICE, EVIDENCE LAW AND PRACTICE § 1004.2 (6th ed. 2016).

[22] In re Det. of Pouncy, 168 Wn.2d 382, 392, 229 P.3d 678 (2010) ("Where our evidence rules mirror their federal counterparts, we may look to federal case law interpreting the federal rules as persuasive authority in interpreting our own rules.").

[23] Remington Arms Co. v. Liberty Mut. Ins. Co., 810 F. Supp. 1420, 1426 (D. Del. 1992).

[24] RP (Jan. 23-24, 2017) at 139-40.

[25] RP (Jan. 23-24, 2017) at 144.

*not* testify, as the State contends, that he "could not obtain a copy of the video."[26] Rather, he testified that he assumed that he would not be able to, or that it would be difficult. Because the State made no showing that the original was lost or destroyed, and presented no evidence of a diligent but unsuccessful search, the trial court abused its discretion by admitting Officer Scheepers' testimony of the contents of the surveillance video.

That said, under the "harmless error" standard, we will not reverse due to an error in admitting evidence "unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred."[27] Here, the State presented evidence that the station clerk recognized the woman who attempted to take the car as the same woman who had been in the Tesoro store earlier, and that this woman left two bags in the car. The State also presented evidence that two officers recognized these bags as the same bags that Ms. Nelson had been carrying a short time before the incident at the Tesoro station, and that the officers' contact with Ms. Nelson ended at the police station, which is very close to the Tesoro station. The State also presented testimony from the station clerk that the woman who attempted to take the car was a little shorter than the clerk, about 125-130 pounds, with dark hair—a description that apparently matches Ms. Nelson. Furthermore, Officer Scheepers, when describing what he had seen on the surveillance video, never identified the subject in the video as Ms. Nelson—or even as a woman. In light

---

[26] See Brief of Respondent at 10.

[27] State v. Tharp, 96 Wn.2d 591, 599, 637 P.2d 961 (1981) (citing State v. Cunningham, 93 Wn.2d 823, 613 P.2d 1139 (1980)).

7

of the foregoing, any error in admitting Officer Scheepers' testimony describing the contents of the surveillance video was harmless.

    We affirm.

WE CONCUR: